**Carol CAMP, as Administratrix of the Estate of Alder B. Seal, Deceased,**

v.

**COMMISSIONER OF INTERNAL REVENUE and United States of America.**

**Civ. A. No. 86–918.**

United States District Court,
E.D. Louisiana.

May 8, 1986.

Dale R. Baringer, of Schaneville & Baringer, Baton Rouge, La., Barry Lieberman, of Dickerson, Dickerson & Lieberman, Las Vegas, Nev., for plaintiff.

Eneid A. Francis, Asst. U.S. Atty., New Orleans, La., Steven Greminger, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

At issue before the Court is the question of whether a jeopardy assessment made by the Internal Revenue Service should be set aside.[1]

On January 30, 1986 a jeopardy assessment for income tax deficiencies in the amount of $29,478,718.00 was made against Adler B. Seal, regarding tax deficiencies allegedly due for the taxable years 1981, 1982 and 1983.[2]

Before his death, Mr. Seal was extensively involved in smuggling illicit and illegal drugs into the United States. He was a criminal character. He was the subject of two convictions in federal courts in Florida and in 1984 he was sentenced to a ten year prison term (which was later reduced to time served plus a term for probation as a result of his apparent cooperation with law enforcement authorities). In January, 1985 Seal pleaded guilty to conspiracy to distribute cocaine and to violation of currency reporting laws in Louisiana.

His confrontations with the criminal justice system were colorful and widespread. Mr. Seal's lifestyle was flamboyant and eccentric; it was constantly beyond the limits of the law, and that is the backdrop against which the assessment must be considered.

During the taxable years 1981, 1982 and 1983, according to the Internal Revenue Service, Seal earned in excess of approximately $20 million from illicit drug smuggling activities. He only reported income in excess of $1 million for the same period. He owned at least four different types of aircraft. According to the evidence, he may have owned at least three boats through the use of nominees in the Cayman Islands and Panama; one boat alone was valued at nearly $700,000. He used several aliases during the last part of his life before he was killed, and he possessed a Honduran passport.[3] The taxpayer's estate does not have sufficient property remaining from which the Internal Revenue Service's potential tax liability can be collected or satisfied. The evidence shows that during the latter part of December 1985 and in January of 1986, Mr. Seal wrote unusually large amounts of checks to cash for a sum close to $150,000.00, again, under unexplained circumstances. In short, Adler B. Seal's activities afforded him the explicit potential for the realization of sizable amounts of clandestine unreported income. His own words have confirmed that. Finally, when the Internal Revenue Service first came to him about his tax problem, he refused to permit them entry, and was later observed to have been burning records when the Internal Revenue agents confronted him.

The law is clear. Under Section 7429 of the Internal Revenue Code, it is the obligation of this Court to make a de novo determination as to whether the making of the assessment by the Internal Revenue Service is reasonable under the circumstances, and whether the amount assessed is appropriate under the circumstances.[4]

1. No appeal from this proceeding is provided by law. 26 U.S.C. § 7429(f).

2. The jeopardy assessment was made pursuant to the request and recommendation of Internal Revenue Service agents, and the recommendation was processed and reviewed through the regular and usual channels; it was approved at all appropriate bureaucratic levels of authority. By letter dated February 4, 1986, the taxpayer was given notice of the jeopardy assessment, was advised of his administrative and judicial review rights, and was furnished with a written statement explaining the reasons for the assessment against him and the computation of the tax. The letter and statement given to him satisfied the requirement of law that the taxpayer be given a written statement setting forth the reasons for the action proposed against him within five days of the date of the assessment. 26 U.S.C. § 7429(a). Mr. Seal was apparently murdered on February 19, 1986, less than one month after the jeopardy assessment was made.

3. The passport was issued in 1984 under unclear circumstances.

4. This Court has jurisdiction of this action by virtue of the provisions of § 7429(b) of the Internal Revenue Code and Title 28 of the United States Code § 1346(e). This Court does not, however, have jurisdiction over the Commissioner of the Internal Revenue Service, but the lack of that jurisdiction is not meaningful with-

See *Nolan v. United States*, 539 F.Supp. 788 (D.Ariz.1982). In determining whether the making of the assessment was reasonable and whether the amount assessed was appropriate, the Court is not limited to a consideration of information which was available solely at the time the jeopardy assessment was made. The Court may consider any information which subsequently becomes available, including information through evidence which was disclosed during the course of this proceeding. See *Johnson v. United States*, 468 F.Supp. 461 (M.D.Fla.1979); *Loretto v. United States*, 440 F.Supp. 1168 (E.D.Pa.1977). Section 7429(b) contemplates a summary proceeding, the purpose of which is to determine only the issues of reasonableness under the circumstances of the jeopardy assessment and the appropriateness under the circumstances of the amount assessed. The law clearly teaches, then, that the statute in question does not contemplate that this Court should attempt to determine the taxpayer's ultimate liability. See *Loretto, supra* at 1174. It is important and instructive to observe here that this Court's determination under Section 7429(b) will have no effect on any subsequent proceeding to determine the taxpayer's correct or ultimate tax liability, if any. See *Nolan, supra* at 790.

The Court finds from the evidence that the jeopardy assessment levied against Mr. Seal was reasonable under the circumstances, for the following reasons. Adler B. Seal participated on a large scale basis in drug smuggling operations.[5] See *McAvoy v. United States*, 475 F.Supp. 297 (W.D. Mich.1979). Another important consideration for the Court is that Mr. Seal was arrested, convicted, and pleaded guilty to various drug related and cash laundering offenses. See *Vidiella v. United States*, 56 A.F.T.R.2d 85–5950 (S.D.Fla.1985); *De-*

*Niro v. United States*, 44 A.F.T.R.2d 79–5378 (N.D.Ohio 1979). Cash laundering is a well known adjunct to the success of illicit drug trafficking enterprises. Mr. Seal himself testified before the President's Commission on Organized Crime that his operation alone involved the laundering of between $10 and $20 million; he testified to the Commission that he bought à helicopter for $250,000 in cash, and that he purchased an airplane which was used for drug smuggling for $300,000 cash. Thus, the Internal Revenue Service had good reason to surmise that Mr. Seal failed to report enormous amounts of illicit income from drug smuggling operations. See *Vidiella v. United States, supra; Johnson v. Chivatero*, 51 A.F.T.R.2d 83–620 (E.D.La.1982); *McAvoy v. United States, supra; Loretto v. United States, supra*. According to Mr. Seal, he made a profit of one and one-half million dollars on one drug smuggling flight alone. Mr. Seal put sizable assets out of the reach of the Internal Revenue Service through the use of offshore corporations in the Caymen Islands, in Panama, and in the Caicos Islands. His connection with the use of nominee corporations is strange, and defies the most casual definition of good faith conduct; it is that conduct which confronted the Internal Revenue Service at the time the jeopardy assessment was made in 1986. *Vidiella v. United States, supra; Billig v. United States*, 81–2 U.S.T.C. (CCH) ¶ 9792 (N.D.Ga.1981). Finally, Seal's estate does not have sufficient property remaining from which the potential tax liability of $29 million can be collected or satisfied. *Loretto v. United States, supra* at 1174.

For all of the foregoing reasons, the Court finds that the jeopardy assessment levied by the Government on January 30, 1986 was reasonable under the circum-

in the context of this proceeding. See *Basic Unit Ministry, Etc. v. United States*, 511 F.Supp. 166, 167 (D.D.C.1981), *affirmed* 670 F.2d 1210 (D.C.Cir.1982).

**5.** Mr. Seal was such an important character in the drug smuggling universe that he was invited

to testify before the President's Commission on Organized Crime. Much of the Government's information regarding his illicit income came from his own testimony before that Commission, under oath.

stances which confronted the Government at the time the assessment was made.

The plaintiff has the burden of proof on the issue of the appropriateness of the amount of the assessment. 26 U.S.C. § 7429(g). Further, plaintiff must overcome a presumption that the amount assessed is reasonable. *Revis v. United States*, 558 F.Supp. 1071 (D.R.I.1983). Plaintiff has not shown that the method of computation of the potential tax liability was factually defective, irrational, arbitrary or unsupported. Indeed, this Court's review of Mr. Seal's testimony under oath before the President's Commission on Organized Crime and his testimony under oath during drug smuggling proceedings against him in Florida would suggest to the Court, although it is not the responsibility of this Court to decide, that there is at least a sense of credibility and correctness regarding the proposed computation of the deficiency assessment made against Mr. Seal and now made against his estate by the Internal Revenue Service.[6]

Evidence gathered and presented to this Court touching upon Mr. Seal's activities and brought to the attention of the Internal Revenue Service even subsequent to the levying of the jeopardy assessment indicates that, considering all of the circumstances mentioned earlier, the making of the assessment was reasonable under established judicial decisions, and plaintiff has failed to establish the inappropriateness of the amount of the assessment.

Finally, Mr. Seal's unfortunate death does not change the focal point of this Court's inquiry: whether or not the making of the jeopardy assessment at the time it was made was reasonable under the circumstances? See *Patrick v. United States*, 524 F.2d 1109 (7 Cir.1975). Accordingly, for the foregoing reasons, the Complaint of plaintiff is dismissed with prejudice and each party is ordered to bear their own costs.

---

**6.** Whether or not the Government relied on surgically precise information when the jeopardy assessment was made is not the touchstone issue in this proceeding. See *Kerness v. United States*, 48 A.F.T.R.2d 81–5604 (D.Minn.1981). The Service is not held to such a strict standard when collection of tax is in jeopardy.