Cecil M. YOUNG, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 86–6220–CIV.

United States District Court, S.D. Florida, N.D.

June 24, 1987.

Ivy Cowan, Larry V. Bishins, Ft. Lauderdale, Fla., for plaintiff.

Paul E. Pelletier, U.S. Dept. of Justice; Tax Div., Washington, D.C., for defendant.

## FINAL JUDGMENT

ZLOCH, District Judge.

THIS MATTER was heard by the Court without a jury for judicial review of termination assessments made by the Internal Revenue Service against the Plaintiff, Cecil M. Young. The United States having filed its Response to the Complaint, the Court held an evidentiary hearing in this matter at which time evidence was received, testimony adduced and the Court heard arguments of counsel for the respective parties. Having fully considered and reviewed the matter, having reviewed the court file and being otherwise fully advised in the premises and after due consideration, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On July 1, 1985, Plaintiff was stopped by officers of the Broward County Sheriff's Department for a traffic offense. Plaintiff's automobile was searched and $40,338.55 in cash was found in a safe located in the automobile's trunk. An inventory of the money revealed two hundred and seventeen (217) $100.00 bills and twenty-one (21) $50.00 bills, with the remainder of the cash in smaller denominations. Plaintiff was charged with unlawful speed and the misdemeanor offenses of driving under the influence and possession of cannabis. The possession of cannabis charge was subsequently *nolle prosequied.*

2. On January 2, 1986, Plaintiff was again stopped by officers of the Broward County Sheriff's Department for a traffic offense. Plaintiff's automobile was searched and a total of $107,410.00 in cash was found in the car, consisting of approximately $21,000.00 found in a brown paper bag in the back seat, as well as approximately $82,000.00 in a safe located in the trunk. Plaintiff was arrested for driving under the influence. A subsequent laboratory analysis of residue in the safe tested negative for cocaine.

3. Plaintiff is a resident alien with Jamaican citizenship.

4. Plaintiff is the owner of Filter Renew Services, formerly located at 3461 Ravenswood Road, Fort Lauderdale, Florida.

5. Based upon their investigations, both the Drug Enforcement Agency and the Broward County Sheriff's Department have concluded that Filter Renew Services is a front for a major marijuana smuggling operation with ties to Jamaica.

6. An informant for the Broward County Sheriff's Department has purchased marijuana at the Filter Renew Service location.

7. Plaintiff was arrested in 1982 in Ontario, Canada on a narcotics violation.

8. Plaintiff reported an adjusted gross income of $9,390.00 on his 1983 Federal income tax return. In 1984, Plaintiff reported an adjusted gross income of $8,316.00 with a taxable income of $0.00 on his Federal income tax return. Moreover, Plaintiff's adjusted gross income on his 1985 return was reported as a negative ($768.48).

9. On July 12, 1984, Plaintiff purchased a Mercedes–Benz automobile for $35,550.00. Plaintiff made a down payment of $15,180.00 in cash on the automobile and financed the remainder of the purchase price, which financing requires that Plaintiff make monthly payments of $450.00.

10. Plaintiff's 1985 income tax return indicates that Plaintiff also purchased a truck for $84,731.70.

11. Plaintiff is president, secretary, and treasurer of Sunrise Fina, Inc., a closely held corporation which has been granted sub-chapter "S" status with the Internal Revenue Service. Despite its sub-chapter

"S" status, Plaintiff's individual income tax returns for the years 1983, 1984, and 1985, reflect no profits or losses attributable to the gas station operations of Sunrise Fina, Inc. Moreover, Plaintiff has not filed a Form 1120 for the gas station operations of that corporation during those years.

12. Plaintiff, as an agent of Sunrise Fina, Inc., purchased another truck in 1985 for $8,237.50 in cash.

13. Plaintiff, by way of affidavit, admits that he owns three trucks and a van, all financed through Ford Motor Credit Corporation. Plaintiff also states that he and his wife own two cars, each financed through Sun Bank of South Florida.

14. Plaintiff also owns two residences, each of which is mortgaged through Coral Gables Federal Savings and Loan and Landmark Bank, respectively.

15. On January 10, 1986, the Secretary of the Treasury, acting through his authorized delegates, made two termination assessments of income tax liability against the Plaintiff for the periods from January 1, 1985 through December 31, 1985, and for the period ended January 2, 1986, in the amount of $18,197.00 and $48,296.00 respectively. The computations used by the Internal Revenue Service in making those assessments were set forth in Government's Exhibit 5(c), and are based primarily on the unsatisfactorily explained cash found in Plaintiff's automobile, adjusted for living expenses and other matters.

16. Plaintiff appealed the termination assessments, and on February 21, 1986, after hearing, a delegate of the Secretary of the Treasury informed Plaintiff that the District Director's findings were sustained, both as to the making of the assessments and the amounts thereof.

17. Plaintiff did not appear at the hearing he requested before the Internal Revenue Service Appeals Officer. At the hearing before this Court, Plaintiff also did not appear. Plaintiff did, however, submit five (5) affidavits in support of his position.

18. The explanation offered by Plaintiff, by way of affidavit, as to the source of the $40,338.55 found in his trunk on July 7, 1985, is that the cash was proceeds from "corporation sales." The Court considers that it is highly unlikely that gas station receipts would consist of two hundred and seventeen (217) $100.00 bills as was found in the July 7 search of Plaintiff's automobile, and does not find that explanation credible.

19. As for the source of the $107,410.00 found in Plaintiff's automobile on the date of his January 2, 1986 arrest, Plaintiff asserts, again by way of affidavit, that $69,201.16 was the repayment of "corporate loans" and that the remaining balance of $38,208.24 was money that Plaintiff "had saved and accumulated through the years." Again, it is not reasonable to believe that Plaintiff would transport and retain his life savings in a brown paper sack in the back seat of his car, and the Court does not find Plaintiff's explanation credible.

20. The Court finds that the affidavit testimony of Plaintiff admitted into evidence is neither plausible nor credible.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under Section 7429 of the Internal Revenue Code of 1954 (26 U.S.C.). The Court further has personal jurisdiction over the parties hereto.

2. Sections 6851, 6861, and 6862 of the Internal Revenue Code (26 U.S.C.) embody methods of assessment and collection of taxes which may be rendered ineffective or jeopardized to some degree if collection efforts are delayed. The special types of assessments are divided into two categories: "termination" and "jeopardy". Section 6851 contains the provisions governing the making of termination assessments of income taxes, and Sections 6861 and 6862 contain the authority for making jeopardy assessments. If the Internal Revenue Service determines that the collection of taxes is in jeopardy, it is authorized to determine immediately the amount of the tax due, serve notice of the termination or jeopardy assessment upon the taxpayer, immediately demand payment, and immediately levy upon the taxpayer's property. See 26 U.S.C. Section 6331(a), (d)(2).

3. In view of the sweeping authority given to the Internal Revenue Service under the jeopardy and termination assessment provisions, and because of the possibility of harsh results in a particular case, Congress enacted Section 7429 to provide some form of summary judicial review, on an expedited basis. 26 U.S.C. Section 7429(b)(2), (c).

4. The judicial review envisaged by Section 7429 is limited not only in its scope, but also in its effect. The Senate Finance Committee, in explaining the intended effect of a District Court's determinations under Section 7429, made this clear:

A determination made under new Section 7429 will have no effect upon the determination of the correct tax liability in a subsequent proceeding. The proceeding under the new provision is to be a separate proceeding which is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability, either by action for refund in a Federal district court or the Court of Claims or by a proceeding in the Tax Court. S.Rep. No. 94–938, 94th Cong., 2d Sess. 365, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3795.

5. The scope of the judicial review under Section 7429(b) of the Code is limited to a determination by the District Court of (1) whether the making of the termination or jeopardy assessment was reasonable under the circumstances and (2) whether the amount assessed is appropriate under the circumstances.

6. The Government bears the burden of proof on the issue of whether the assessment was reasonable under the circumstances and the taxpayer bears the burden of proof on the issue of whether the amount assessed is appropriate under the circumstances. Section 7429(g)(1) and (2).

7. In considering the enactment of Section 7429, Congress expressed its approval of certain "standards" or "guidelines" for use in determining whether the making of a jeopardy or termination assessment is appropriate. Those alternative standards are whether:

1. The taxpayer is or appears to be designing quickly to depart from the United States to conceal himself;

2. The taxpayer is or appears to be designing quickly to place his property beyond the search of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

3. The taxpayer's financial solvency appears to be imperiled.

See, *Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976*, H.R.Rep. No. 10612, 94th Congr., 2d Sess. 361 n. 7 (1976).

8. A taxpayer's involvement in illegal activity alone is sufficient to warrant the use of a termination or jeopardy assessment. See *Harvey v. Early*, 66 F.Supp. 761 (W.D.Va.1946), aff'd, 160 F.2d 836 (4th Cir.1947); *Kerness v. United States*, 81–1 U.S.T.C., para. 16,364 (D.Minn. 1981). Moreover, involvement in illegal activities is an important consideration in the determination of whether the assessment was reasonable. See *Camp v. Commissioner*, 635 F.Supp. 585, 58 A.F.T.R.2d 86–5008 (E.D.La.1986); *Fitzgerald v. United States*, 57 A.F.T.R.2d 86–930 (M.D.Penn. 1986) [Available on WESTLAW, 1986 WL 5150]; *Vidella v. United States*, 56 A.F.T. R.2d 85–5295 (S.D.Fla.1985); *Abercrombie v. United States*, 46 A.F.T.R.2d 80–5890 (D.S.C.1980) [Available on WESTLAW, 1980 WL 1653]; *Auth v. United States*, 45 A.F.T.R.2d 80–434 (D.Utah 1979) [Available on WESTLAW, 1979 WL 1503]; *Billig v. United States*, 49 A.F.T.R.2d 82–479 (N.D. Ga.1982) [Available on WESTLAW, 1981 WL 1898]; *Canon v. United States*, 40 A.F.T.R.2d 77–5529 (D.Nev.1977) [Available on WESTLAW, 1977 WL 1280]; *Davis v. United States*, 511 F.Supp. 193 (D.Kan. 1981); *Lace v. United States*, 79–2 U.S. T.C., para. 9692 (D.Vt. 1979) [Available on WESTLAW, 1979 WL 1491].

9. In this case it is certainly reasonable to conclude that Plaintiff may have been involved in criminal activity. This, along with Plaintiff's propensity for dealing in large amounts of undisclosed cash

**1344**

while reporting very small amounts of income in his Federal income tax returns, indicates that Plaintiff is designing to conceal assets and place property beyond the reach of the Government and not likely to accurately report his correct income. Moreover, Plaintiff's admission that virtually all of his assets are encumbered makes it virtually impossible for the Internal Revenue Service to secure compliance through its normal assessment and collection procedures.

10. Under the foregoing circumstances the Government has met its burden of establishing that the making of the termination assessments herein was reasonable under the circumstances.

11. Plaintiff has offered no credible evidence to establish that the amounts assessed by the Internal Revenue Service were inappropriate under the circumstances.

12. As a matter of law, the making of the termination assessments against the Plaintiff was reasonable under the circumstances and the amount assessed was appropriate under the circumstances.

Accordingly, it is

ADJUDGED that Final Judgment pursuant to the Findings of Fact and Conclusions of Law set forth above be and the same is hereby entered in favor of the Defendant, United States of America, and against the Plaintiff, Cecil M. Young, and the Plaintiff shall take nothing by this action and the Defendant shall go hence without day, each party to bear its own costs.