Jerry Lee **HARVEY**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. 88–6119–CIV.**

United States District Court,
S.D. Florida, N.D.

Feb. 6, 1990.

---

Edward Guttenmacher, Miami, Fla., for plaintiff.

Alvarez L. LeCesne, Jr., Asst. U.S. Atty., U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## FINAL JUDGMENT
## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

ZLOCH, District Judge.

THIS MATTER came before the Court for judicial review of jeopardy assessments made by the Internal Revenue Service against the Plaintiff, Jerry Lee Harvey for the tax years 1978 through 1983. The Court held an evidentiary hearing in this matter at which time evidence was received and testimony adduced, including the testimony of Jerry Lee Harvey through his deposition taken on May 18, 1988 (Pl. Exhibit 6). Counsel submitted their closing arguments in writing. Having fully considered and reviewed the matter, having reviewed the court file and being otherwise fully advised in the premises and after due consideration, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff, Jerry Lee Harvey, is a citizen of the United States, residing in Fort Lauderdale, Florida.

2. Plaintiff has a history of involvement in large-scale drug smuggling. In 1977, Plaintiff was arrested and sentenced to five years probation for possession of over 100 pounds of cannabis and conspiracy to import cannabis. (Govt. Exhibit 1; Tr. 67). In 1980, Plaintiff was arrested in Alabama for possession with intent to distribute more than 100,000 quaaludes. (Tr. 70–71). More recently, the Plaintiff has been indicted for conspiracy to traffic in cocaine. (Govt. Exhibit 33; Tr. 73–75 and testimony of Ken Kibort, January 30, 1989). Plaintiff, himself, admits to conspiring to smuggle drugs. (Pl. Exhibit 6 at 157).

3. In relation to Plaintiff's 1980 arrest for importing quaaludes, the United States Attorney for the Southern District of Alabama granted Harvey immunity from prosecution in exchange for his providing information to the United States. *See United States v. Harvey*, 869 F.2d 1439 (11th Cir. 1989). The immunity agreement was never reduced to writing and its parameters have been the subject of subsequent legal proceedings. *Id.* at 1441; *Harvey v. United States*, Case No. 87–6193 (S.D.Fla. September 24, 1987) (review of 1986 termination assessment).

4. In 1985, a grand jury in the Southern District of Florida returned an indictment charging Plaintiff with 5 counts of income tax evasion for the years 1978 through 1982, in violation of 26 U.S.C. section 7201 and one count of filing a false income tax return for the 1980 tax year. The indictment alleges that Harvey failed to report interest income from his Cayman Islands bank accounts on his 1978 through 1982 individual income tax returns and that he failed to report any interest income in any foreign bank account on his 1980 tax return. *Harvey*, 869 F.2d at 1441. At a pre-Kastigar hearing held in connection with this criminal case, Plaintiff testified that in 1980 he had revealed to DEA agents that he had deposited millions of dollars, earned through illegal drug transactions, into his accounts at the Nova Scotia Bank in the Cayman Islands. He also testified that he had told the agents how he set up corporations in the Cayman Islands to launder drug money. *Id.* at 1448. The District Court determined that Harvey had divulged his financial dealing with respect to his illegal drug deals, including the identification of funds in the Cayman Islands bank, to the Government pursuant to his 1980 immunity grant. Based on this determination, the Court in *United States v. Harvey*, 651 F.Supp. 894 (S.D.Fla.1986), *rev'd*, 869 F.2d 1439 (11th Cir.1989), dismissed the indictment for all years on the grounds that it was improperly based on immunized testimony. (Pl. Exhibit 6 at Exhibit 4).

5. The United States appealed the dismissal of the indictment as it pertained to the tax years 1980 through 1982. On appeal, the Eleventh Circuit reversed the District Court and determined that the 1980 immunity grant did not extend to the 1980 through 1982 tax years because these violations occurred after the grant of immunity. *Harvey*, 869 F.2d at 1449. The Court of Appeals also determined that the scope of

the grant of immunity was coextensive with Plaintiff's Fifth Amendment privilege which he gave up in exchange for immunity. *Id.* at 1446.

6. In 1986, Plaintiff was indicted and arrested in the Eastern District of Missouri for conspiracy to defraud the United States by impeding the Internal Revenue Service's ascertainment and collection of federal taxes in violation of 18 U.S.C. section 371. (Tr. 22–31; Pl. Exhibit 6 at Exhibit 11). Plaintiff was tried and convicted for this crime and is currently incarcerated pursuant to this conviction. (Govt. Exhibit 32, Testimony of Ken Kibort, January 30, 1989).

7. Subsequent to the arrest of Plaintiff in 1986, the Internal Revenue Service made a termination assessment against Plaintiff for his 1986 tax year. (Tr. 22–26). Plaintiff challenged that assessment in *Harvey v. United States*, Case No. 87–6193 (S.D. Fla. September 24, 1987). In addressing objections of Plaintiff's counsel during the termination proceeding, the District Court determined that no immunity had been granted for protection against civil actions for taxes. (Govt. Exhibit 12).

8. Based on filed pleadings, exhibits, and facts discussed in decisions in the various criminal and civil cases involving Harvey, the Internal Revenue Service determined that the collection of unpaid income taxes from Plaintiff was in jeopardy and on December 10, 1987, the Service made jeopardy assessments against Plaintiff for the tax years 1978 through 1983. (Govt. Exhibit 13). Harvey timely filed a complaint for review of these jeopardy assessments.

9. During all tax years at issue, Plaintiff held personal assets in the names of corporations. He purchased a condominium in North Carolina in 1978 in the name of Cayman Aviation Finance, Inc. (Tr. 130–132; Govt. Exhibits 8(f)–8(j)). Plaintiff referred to Cayman Aviation as "my company." (Govt. Exhibit 8(j)). From 1979 until early 1983, Plaintiff also maintained a bank account in the name of Cayman Aviation Finance at the Bank of Nova Scotia in the Cayman Islands. Harvey had sole signature authority on this account. (Govt. Ex-

hibits 4 and 8(c)). Cayman Aviation Finance has never filed any federal tax return. (Govt. Exhibit 8(d)).

10. Plaintiff also held real estate, including his personal residence, in the name of Intercontinental Aircraft Leasing, Inc., a corporation which as of January 30, 1986, had never filed a tax return of any kind. (Tr. 124–127, Govt. Exhibits 8(d), 8(g) 8(i); Govt. Exhibit 4, Exhibit B, p. 6 of 6 thereto). Although the house was titled in the name of Intercontinental Aircraft Leasing, Harvey deducted the interest payments associated with the mortgage on this property on his personal income tax returns. (Govt. Exhibits 9(e)–9(f), Schedule A).

11. Since at least 1978, Plaintiff has maintained funds in foreign bank accounts. From 1978 until 1983, Plaintiff had bank accounts at the Bank of Nova Scotia in the Cayman Islands, including accounts in his own name and those in the name of Cayman Aviation Finance, Inc. (Govt. Exhibit 4).

12. In June 1983, Plaintiff was informed that he was the target of a grand jury investigation and was served a subpoena requesting the production of records of various corporate accounts, including Cayman Aviation Finance, Inc. (Tr. 110–111; Pl. Exhibit 6 at Exhibit 15). Approximately one month later, Harvey transferred $3,125,000 out of the accounts in the Cayman Islands. (Tr. 109–110; Exhibit E, p. 2 of 29 to Govt. Exhibit 4).

13. During the course of the present proceedings, the United States revealed its belief that Plaintiff currently has substantial assets in accounts at the Panama branch of the Bank of Credit and Commerce (BCCI) and that it had served a levy on the bank. (Tr. 26–27; Govt. Exhibits 14–17). Aware of the Service's levy, Plaintiff, acting through an agent to whom he had given power of attorney over his bank accounts, attempted to withdraw his funds from BCCI while this jeopardy review action was pending. (Tr. 136–141; Govt. Exhibits 17–19).

14. Plaintiff admittedly has used at least one alias. In his trial deposition, Harvey admitted to using the name of David

Funston and to having a birth certificate, a Canadian passport, and a driver's license issued in that name. Harvey also acknowledges that he used these documents issued to an alias as late as 1985, one year before his current incarceration. (Pl. Exhibit 6 at 94–95). It further appears that Harvey issued checks out of his Panama accounts to David Funston. (Govt. Exhibit 15).

15. Plaintiff filed federal income tax returns for the tax years 1978 through 1983. In none of these returns does he report any income from interest earned from foreign bank accounts. (Govt. Exhibits 9(a)–9(f)). In his 1980 tax return, Plaintiff specifically denies having any foreign bank accounts. (Govt. Exhibit 9(c)).

16. In its jeopardy assessments, the Internal Revenue Service determined that Harvey had unreported income for the years 1978 through 1983 in the aggregate amount of $4,643,567.53. (Govt. Exhibit 13). The Service based this figure on the total dollar amount of the 46 checks issued from accounts at the Bank of Nova Scotia, which were either held in the Plaintiff's own name or which were controlled by him. (Govt. Exhibit 13; Govt. Exhibit 4 at Exhibit B at p. 6; Govt. Exhibit 23).

17. The Government obtained these financial documents pursuant to a letter agreement with the Cayman Islands. (Govt. Exhibit 4).

18. Of this amount, the Service designated $1,800,000 as being interest income earned on the foreign bank accounts during the years 1978 through 1982. (Govt. Exhibit 13). This interest figure is a specific item of income on which the indictment of Plaintiff in the Southern District of Florida for the tax years 1978 through 1982 was based. (Govt. Exhibit 4; Pl. Exhibit 6 at Exhibit 14).

19. The balance of the aggregate amount of the 46 drafts, $2,843,567.53, was attributed to unexplained bank deposits during the years 1978 through 1983 inclusive. (Govt. Exhibit 13; Tr. 172–176).

20. Harvey does not claim that he did not earn foreign interest for these years, rather, he asserts that he did not know that he was required to report the interest.

This Court rejects Plaintiff's explanations for his failure to report his interest on foreign accounts as being inconsistent and incredible. First, Plaintiff claimed that he acted on advice given to him by good friends, and believed that he did not have to report foreign interest income on his tax returns. (Pl. Exhibit 6 at 200, 296). However, these individuals deny being the Plaintiff's friends and deny that they ever gave him tax advice. (Tr. 312–315; Govt. Exhibit 21).

Then, Harvey implied that he had actually reported the interest earned during 1978 through 1983 on Schedule C of his 1983 tax return as gross income. (Pl. Exhibit 6 at 204–205). Plaintiff's tax return preparer unequivocally refutes this assertion. (Govt. Exhibit 22). Plaintiff also contends that he believed that he did not have to report the interest income pursuant to the 1980 immunity grant. (Pl. Exhibit 6). This does not explain why Plaintiff did not report the interest for the years 1978 and 1979, prior to the grant of immunity. The explanation also contradicts Harvey's implications that he did report the interest income on his 1983 return. Harvey also claims he did not report the foreign interest income due to the complexity of the tax laws governing foreign corporations. This contention does not explain why Plaintiff failed to report income from accounts and certificates of deposit held in his own name. (Govt. Exhibit 4 at Exhibit E). In short, Plaintiff's explanations for these omissions are inconsistent and lack credibility.

21. Although the expert for Plaintiff testified that the amount of interest utilized by the Internal Revenue Service in computing Harvey's assessments imputed too high a rate of interest, no evidence was submitted as to what rate of interest Plaintiff actually earned on his foreign accounts. Although the Plaintiff submitted a copy of the Federal Reserve Bulletin which gave the average domestic interest rates for the years at issue, the Bulletin does not reference rates in foreign countries. (Pl. Exhibit 1). Furthermore, the expert's opinion was erroneously based on the assumption

that the Service had assumed an interest rate of approximately 16%, when in fact the Service used a specific amount of interest, $1.8 million, in its computations. (Tr. 221–222).

22. The Plaintiff also claims that there are duplications in the Cayman account and that the taxpayer purchased and sold assets and redeposited funds into the bank accounts. (Pl. Exhibit 5). However, Plaintiff has offered no evidence except these bald assertions that such activities occurred.

23. Plaintiff also contends that there were funds in the accounts which belonged to third parties. (Pl. Exhibit 6, p. 85; Pl. Exhibit 9). Other than this assertion, there is no evidence that the money in the accounts belonged to others. The fact that checks in large amounts were written out of the accounts to third parties does not constitute evidence that those funds belonged to those parties. Furthermore, the fact that checks were drafted out of accounts maintained at BCCI in years subsequent to the tax years at issue is irrelevant to determining whether the funds in the Cayman Islands accounts belonged to others.

24. The taxpayer also asserts that the Service has failed to give him credit for cash on hand as of January 1, 1978. However, Plaintiff presented no evidence concerning the amount of cash he possessed as of January 1, 1978. The Plaintiff did testify that he had over $500,000 on hand as of January 1, *1979*, an amount not inconsistent with the computations of the Internal Revenue Service. (Pl. Exhibit 6, p. 204).

25. Plaintiff contends at great length that he is being persecuted and that the Government has acted in bad faith in this proceeding. Other than the Plaintiff's unsubstantiated testimony, there is no evidence of governmental misconduct in this action. Given the fact that the Plaintiff is currently incarcerated for conspiracy to impede the functions of the Internal Revenue Service, that he remains under indictment for tax evasion for the years 1980 through 1982, and that the Service is attempting to collect millions of dollars in taxes from him, Harvey's assertion lacks credibility.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action under section 7429 of the Internal Revenue Code of 1954 (26 U.S.C.). The Court further has personal jurisdiction over the parties hereto.

2. Sections 6851, 6861, and 6862 of 26 U.S.C., the Internal Revenue Code, "embody methods of assessment and collection available to the Internal Revenue Service in cases where the collection of taxes may be rendered ineffective or jeopardized to some degree if collection efforts are delayed. The special types of assessments are divided into two cateories: 'termination' and 'jeopardy.' Section 6851 contains the provisions governing the making of termination assessments of income taxes, and sections 6861 and 6862 contain the authority for making jeopardy assessments. If the Internal Revenue Service determines that the collection of taxes is in jeopardy, it is authorized to determine immediately the amount of tax due, serve notice of the termination of jeopardy assessment upon the taxpayer, immediately demand payment, and immediately levy upon the taxpayer's property. 26 U.S.C. § 6331(a), (d)(2)." *Breen v. United States*, 49 A.F.T. R.2d 82–772 (N.D.Ga.1981).

3. "In view of the sweeping authority given to the Internal Revenue Service under the jeopardy and termination assessment provisions, and because of the possibility of harsh results in a particular case, Congress enacted Section 7429 to provide some form of summary judicial review, on an expedited basis." *Id.;* 26 U.S.C. § 7429(b)(2), (b)(3), (c) (1989).

4. "The judicial review envisaged by Section 7429 is limited not only in its scope, but also in its effect. The Senate Finance Committee, in explaining the intended effect of a District Court's determinations under Section 7429, made this clear:

A determination made under new Section 7429 will have no effect upon the determination of the correct tax liability in a subsequent proceeding. The pro-

ceeding under the new provision is to be a separate proceeding which is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability, either by action for refund in a Federal district court or the Court of Claims or by a proceeding in the Tax Court.

S.Rep. No. 94–938, 94th Cong., 2d Sess. 365." *Breen v. United States*, 49 A.F.T.R.2d 82–772.

■ 5.  The scope of the judicial review under section 7429(b)(2) of the Code is limited to a determination by the District Court of (1) whether the making of the jeopardy assessment was reasonable under the circumstances and (2) whether the amount assessed is appropriate under the circumstances.

6.  Congress has delineated the standard for reviewing whether a jeopardy assessment is "reasonable under the circumstances" as being an intermediate review:

"Reasonableness under the circumstances" means something more than "not arbitrary or capricious," and something less than "supported by substantial evidence."

Senate Finance Committee Report, S.Rep. No. 94–938, 94th Cong., 2d Sess. at 365, *reprinted in* 1976 U.S.Code Cong. & Ad. News 2897; *see also Barry v. United States*, 534 F.Supp. 304, 308 (E.D.Pa.1982); *Serpa v. United States*, 47 A.F.T.R.2d 81–1281 (D.Neb.1981); *Loretto v. United States*, 440 F.Supp. 1168, 1172 (E.D.Pa. 1977). This standard of review applies to both the making of the assessment and the amount of the assessment. *Felkel v. United States*, 570 F.Supp. 833, 838 (D.S.C. 1983).

■ 7.  The Government bears the burden of proof on the issue of whether the assessment was reasonable under the circumstances and the taxpayer bears the burden of proof on the issue of whether the amount assessed is appropriate under the circumstances.  26 U.S.C. § 7429(g)(1), (2) (1989).

■ 8.  Because this is a summary proceeding, rather than a full evidentiary hearing, the Court in conducting its review is entitled to rely on evidence that might otherwise be inadmissible in a trial on the merits.  *See Patrick v. United States*, 524 F.2d 1109, 1115 (7th Cir.1975); *Breen v. United States*, 49 A.F.T.R.2d 82–772 (N.D. Ga.1981); *see also United States v. Janis*, 428 U.S. 433, 454, 459–460, 96 S.Ct. 3021, 3034–35, 49 L.Ed.2d 1046 (1976), *reh'g denied*, 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976).

■ 9.  In determining whether the assessment was reasonable, the Court may rely on information obtained after the initial jeopardy assessment.  *See Camp v. Commissioner*, 635 F.Supp. 585 (E.D.La. 1986); *First City National Bank v. United States*, 602 F.Supp. 146, 149 (W.D.Tex. 1984); *Nolan v. United States*, 539 F.Supp. 788, 790 (D.Ariz.1982); *DeLauri v. United States*, 492 F.Supp. 442 (W.D.Tex.1980); *Johnson v. Commissioner of Internal Revenue*, 468 F.Supp. 461, 464 (M.D.Fla. 1979).

10.  In considering the enactment of section 7429, Congress expressed its approval of certain "standards" or "guidelines" for use in determining whether the making of a jeopardy or termination assessment is appropriate.  Those alternative standards are whether:

1.  The taxpayer is or appears to be designing quickly to depart from the United States to conceal himself;

2.  The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it;  or

3.  The taxpayer's financial solvency appears to be imperiled.

*See* Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, H.R.Rep. No. 10612, 94th Cong., 2d Sess., 361, n. 7 (1976).

■ 11.  This Court does not accept Plaintiff's contentions that his 1980 grant of immunity estops the Government from making jeopardy assessments for civil tax liabilities against the taxpayer.  For ease

of analysis, the assessments can be divided between pre-immunity and post-immunity tax years. The Eleventh Circuit has determined that the 1980 grant of immunity does not encompass tax years subsequent to 1979 and that Plaintiff is not immune from criminal prosecution for tax evasion for post-immunity tax years. *Harvey*, 869 F.2d at 1449. In light of the fact that the immunity agreement does not even extend to tax years after 1979, there is no question that the grant of immunity does not preclude the Service from making assessments for the tax years 1980 through 1983. As for 1978 and 1979, the trial judge in *United States v. Harvey*, 651 F.Supp. 894 (S.D.Fla. 1986), *rev'd* 869 F.2d 1439 (11th Cir.1989) originally held that there was immunity from criminal prosecution for tax evasion for these years, but has subsequently determined that, at least for purposes of a termination assessment, the grant of immunity did not include civil matters. *Harvey v. United States*, Case No. 87–6193 (S.D.Fla. September 24, 1987). Given the limited effect of judicial review of a jeopardy assessment pursuant to section 7429, this Court will adopt this well-reasoned approach. For purposes of this jeopardy review, the 1980 grant of immunity does not preclude the Government from making assessments for civil tax liabilities for the years 1978 and 1979.

12. This Court also rejects Plaintiff's contentions that the jeopardy assessments are barred by the statute of limitations. In general, the Internal Revenue Service has three years from the date a return is filed to make an assessment. 26 U.S.C. § 6501(a) (1989). When fraud is present, the statute of limitations on making an assessment remains open indefinitely. 26 U.S.C. § 6501(c)(1) (1989). In a normal refund action or suit to reduce assessments to judgment, the United States has the burden of proving by "clear and convincing" evidence that fraud exists. *Korecky v. Commissioner*, 781 F.2d 1566, 1568 (11th Cir.1986). However, the current case is not a typical civil action for taxes but is a review of a jeopardy assessment pursuant to section 7429 of the Internal Revenue Code and is, therefore, subject to different burdens of proof. The issue of which party bears the burden of proof as to fraud in a jeopardy review proceeding appears to be one of first impression and requires an analysis of the relevant statutory provisions.

■ By statute, Congress has determined that in a judicial review of a jeopardy assessment, the United States has the burden of proving that the making of the jeopardy assessment is reasonable under the circumstances, whereas the taxpayer bears the burden of proving that the amount assessed is inappropriate. 26 U.S.C. § 7429(g) (1989). Congress has indicated that in determining whether the making of the assessment is reasonable under the circumstances, the courts are to consider the following factors:

1. The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself;

2. The taxpayer is or appears to be designing quickly to *place his property beyond the reach of the Government* either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

3. The taxpayer's financial solvency appears to be imperiled.

*See* Joint Committee on Taxation, General Explanation, *supra* (emphasis added). Accordingly, the burden is on the Government to show that the *collection* of revenue is in jeopardy.

■ On the other hand, the taxpayer has the burden of proving that the *amount* is inappropriate. The issue of whether the statute of limitations bars the assessments goes toward the amount of the assessment, i.e., if the statute of limitations has run, the taxpayer has no liability for that year. Therefore, the taxpayer has the burden of proof on this issue in a jeopardy review proceeding. This division of the burden of proof is in conformity with the purpose of the judicial review of a jeopardy assessment which is to provide a summary review of whether the Service's actions are appropriate under the circumstances. In the

present case, the Plaintiff has failed to meet this burden because the badges of fraud are numerous.

■ 13. Even if this Court were to determine that the United States bears the burden of establishing that the statute of limitations is open for all years in a jeopardy assessment, the standard which the United States must meet in a review pursuant to section 7429 of the Internal Revenue Code is "reasonable under the circumstances." Although this standard is somewhat ambiguous, the courts have held that "reasonable under the circumstances" means something more than "not arbitrary or capricious," and something less than "supported by substantial evidence." *Loretto v. United States,* 440 F.Supp. 1168, 1172 (E.D.Pa.1977); *Davis v. United States,* 511 F.Supp. 193, 197 (D.Kans.1981); *McAvoy v. Internal Revenue Service and United States,* 475 F.Supp. 297, 299 (W.D.Mich. 1979); *Marranca v. United States,* 587 F.Supp. 663, 666 (M.D.Pa.1984). When enacting section 7429, Congress was well aware that jeopardy situations would often include elements of fraud, yet Congress chose "reasonable under the circumstances" as the standard of proof. Thus, even if the burden is on the United States in this jeopardy review, the Government need only show that it is reasonable under the circumstances to conclude that fraud is present in order to demonstrate that these jeopardy assessments are not time barred. The United States has met this burden.

■ The evidence in this case reveals numerous elements of fraud including Harvey's consistent and substantial underreporting of income, his concealment of the sources of his income, his withholding information from his tax return preparer, his use of an alias, his use of nominees to purchase assets including his residence and real property in North Carolina, his concealment of assets in foreign bank accounts, his lack of cooperation with the Internal Revenue Service, and his conviction for conspiracy to defraud the United States. *See Bradford v. Commissioner,* 796 F.2d 303, 307 (9th Cir.1986) (understatement of income as a badge of fraud);

*Webb v. Commissioner,* 394 F.2d 366, 379 (5th Cir.1968) (substantial understatement of income as evidence of fraud); *Emmett K. Chaffin, Jr. v. Commissioner,* 46 T.C.M. (CCH) 673 (Tax Ct.1983) (concealing bank accounts in the names of others as evidencing fraud); *Joe Watts Martin v. Commissioner,* 53 T.C.M. (CCH) 486 (Tax Ct.1987) (providing false information to tax return preparer is evidence of fraud); *Augusto P. Rodriguez v. Commissioner,* 51 T.C.M. (CCH) 243 (Tax Ct.1986) (laundering money through Bank of Nova Scotia in Jamaica evidence of fraud); *Harold H. Klingler, Jr. v. Commissioner,* 52 T.C.M. (CCH) 243 (Tax Ct.1987) (elements of fraud include refusal to cooperate with IRS); *James S. Meredith v. Commissioner,* 49 T.C.M. (CCH) 1161 (Tax Ct.1985) (purchase of assets through nominees as evidence of fraud).

■ 14. Neither are the jeopardy assessments prohibited on the grounds that they are based on documents which the Plaintiff asserts were obtained in violation of a treaty with the Cayman Islands. United States citizens do not have standing to challenge purported violations of this treaty because the agreement did not create any rights for United States citizens. *United States v. Mann,* 829 F.2d 849, 852–853 (9th Cir.1987). Harvey, a United States citizen, has no standing to challenge any purported violation of the Cayman Islands treaty.

■ 15. A taxpayer's involvement in illegal activity alone is sufficient to warrant the use of a termination or jeopardy assessment. *Young v. United States,* 671 F.Supp. 1340 (S.D.Fla.1987). *See also Harvey v. Early,* 66 F.Supp. 761, 763 (W.D.Va. 1946), *aff'd,* 160 F.2d 836 (4th Cir.1947); *Kerness v. United States,* 48 A.F.T.R.2d 81–5604 (D.Minn.1981). Certainly, involvement in illegal activities is an important consideration in the determination of whether the assessment was reasonable. *See Camp v. Commissioner,* 635 F.Supp. 585 (E.D.La.1986); *Lace v. United States,* 45 A.F.T.R.2d 80–367 (D.Vt.1979); *Billig v. United States,* 49 A.F.T.R.2d 82–479 (N.D. Ga.1982).

█ Jerry Lee Harvey has been tried and convicted pursuant to 18 U.S.C. section 371 for conspiracy to impede and impair the functions of the Internal Revenue Service, and is currently incarcerated for this crime. (Tr. 32; Govt. Exhibit 32). Furthermore, Harvey remains under indictment for tax evasion pursuant to 26 U.S.C. section 7201 for the years 1978 through 1982, and for filing a false return for 1980. This involvement with criminal tax violations alone justifies the making of the jeopardy assessments in this case.

█ 16. The making of the jeopardy assessments against Harvey is further supported by his attempts to place his property beyond the reach of the Government. The making of a jeopardy assessment is proper if:

> The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it.

General Explanation of the Tax Reform Act of 1976, *supra*. In determining whether a taxpayer is designing to "quickly" place his property beyond the reach of the Government, courts have held that it is not necessary for the United States to demonstrate immediate dissipation or removal of assets. Rather, the test is whether the collection of the taxes would be rendered ineffective or jeopardized if collection efforts are delayed during the standard preassessment and precollection administrative review. *French v. United States*, 44 A.F.T.R.2d 79–5653 (E.D.Okla.1979).

█ In the present case, it is clear that the making of the jeopardy assessments is reasonable because Jerry Lee Harvey is attempting to place his property beyond the reach of the Federal Government. During the pendency of this jeopardy review proceeding, Plaintiff attempted to transfer his assets out of his bank accounts in Panama which the Service had attempted to seize pursuant to levy.

Harvey's recent attempts to place his liquid assets beyond the reach of the Internal Revenue Service parallel his past trans-

fer of assets. In June 1983, when Plaintiff was informed that he was the target of a grand jury investigation and that his accounts in the name of Cayman Aviation Finance were under scrutiny, Harvey promptly transferred his funds out of the Cayman bank accounts. This behavior demonstrates that the use of standard collection procedures against the Plaintiff would be futile.

17. The making of the assessments are also reasonable in light of the Plaintiff's use of nominee or shell corporations. The use of such shell corporations indicates an adversity toward voluntary compliance with the federal income tax laws which renders normal tax collection proceedings ineffective. *See Zion Coptic Church, Inc. v. United States*, 44 A.F.T.R.2d 79–5022, 79–5023 (S.D.Fla.1979). Plaintiff has held assets, including his personal residence, in the name of nominee corporations, Cayman Aviation Finance, Inc. and Intercontinental Aircraft Leasing, Inc. The use of these nominee corporations warrants the making of the jeopardy assessments against Plaintiff.

18. The failure to file correct income tax returns and to pay tax liabilities when due are sufficient facts to justify the jeopardy assessments herein. *See Barry v. United States*, 534 F.Supp. 304, 309 (E.D. Pa.1982); *Fitzgerald v. United States*, 57 A.F.T.R.2d 86–930 (M.D.Pa.1986). Even under the assumed facts presented by Plaintiff's expert witness, the Plaintiff admittedly has failed to file correct income tax returns for all years at issue.

█ 19. This Court finds no merit in Plaintiff's contentions that the jeopardy assessments should be barred because the Internal Revenue Service relied on grand jury information purportedly disclosed in violation of Rule 6(e) of the Federal Rules of Criminal Procedure. The Federal Rules of Criminal Procedure provide for disclosure of grand jury information to a Government attorney conducting criminal matters. Fed.R.Crim.P. 6(e)(3)(A)(i), 54(c). It is axiomatic that this "grand jury information" is

properly revealed during a criminal proceeding.

Furthermore, Rule 6(e) does not restrict the use of grand jury information which has been publicly disclosed in open court. *See In re Special February 1975 Grand Jury*, 662 F.2d 1232, 1236–1237, n. 10 (7th Cir.1981). In *United States v. Sutton*, 795 F.2d 1040, 1050 (Temp.Emer.Ct.App.1986) the court aptly stated that "[t]he public has the right of access to all criminal trials, as well as the right to inspect and copy all records of judicial proceedings not under seal." The "grand jury information" relied upon in making the jeopardy assessment in this case was disclosed in the bond detention hearing, at the pre-Kastigar hearing and in various other aspects of criminal proceedings. There is no evidence that these disclosures were improper. Furthermore, the majority of the information relied upon in making the assessments has been incorporated in a published decision. *See United States v. Harvey*, 869 F.2d 1439 (11th Cir.1989).

20. Under the foregoing circumstances the Government has met its burden of establishing that the making of the jeopardy assessments herein was reasonable under the circumstances.

21. Plaintiff has failed to establish that the amounts assessed by the Internal Revenue Service were inappropriate under the circumstances. Plaintiff's primary contention is that the assessments are inappropriate because they are based on Cayman Islands bank accounts which include the funds of others. However, the evidence which was presented by Plaintiff on this issue, i.e., checks written out to third parties in large sums, carries minimal weight. In contrast, the Government presented evidence that specifically tied $4,129,135, or 88%, of the drafts issued from the accounts to Harvey. *The Service also provided evidence that it was possible that the accounts contained funds in excess of the $4,643,567.53 in checks. Accordingly, this Court finds that the Service's use of the full $4,643,567.53 as income is appropriate under the circumstances.*

22. When a taxpayer fails to provide information from which the Service might determine a more accurate computation of tax due, it is appropriate for the Service to rely on the information which it has available. *De la Fuente v. United States*, 596 F.Supp. 643, 645 (M.D.Fla. 1984). In this case, Plaintiff does not deny earning interest on his foreign accounts, but contends that the interest figure used by the Internal Revenue Service is too high. No evidence of the interest actually earned by the Plaintiff was submitted. In light of the fact that the Government presented evidence that Plaintiff had at least $4 million in his Cayman Islands accounts and that Plaintiff earned 18–¾% interest on a CD, the Court finds that the Internal Revenue Service's use of $1,800,-000 as the amount was appropriate under the circumstances.

23. Plaintiff also contends that he should be allowed $500,000 as cash on hand as of January 1, 1978. However, he presented no evidence whatsoever to substantiate this claim. Therefore, it was appropriate for the Service to exclude this amount from its computations.

24. Additionally, Plaintiff asserts that the Service failed to take into account gross income reported on the taxpayer's returns. However, the Service demonstrated that merely by using expenses reflected on the tax returns only a minimal amount of gross income would have been available for deposit into the Cayman Islands accounts. Given that the Service did not even take into account general living expenses in calculating Plaintiff's yearly expenses, this Court finds it appropriate that the Internal Revenue Service did not reduce the $4,643,568 in unreported gross income by the amount of gross income reflected on Plaintiff's tax returns.

25. Neither does the Court accept Plaintiff's assertions that there are significant duplications in the accounts. Although Plaintiff asserts that it was standard practice for funds to be withdrawn for purchases and then redeposited, there is no corroborative evidence to support this allegation.

Furthermore, Plaintiff submitted no substantive evidence of which items were duplicative.

26. The Plaintiff also asserts that his tax liability should be reduced due to maximum tax rates, income averaging, foreign residence exclusions and Subpart F income. This Court is not charged with determining the taxpayer's ultimate tax liability but need only determine whether the amounts of the jeopardy assessments are appropriate. These computational objections to the amounts assessed are not appropriately addressed in this proceeding. *Ruth v. Commissioner,* 47 A.F.T.R.2d 1398 (M.D.Fla.1981). Even if this Court were to address these specific issues, the burden is on the taxpayer to demonstrate that he is entitled to any of these items. Other than the testimony of Plaintiff's expert which was based on hypotheticals and assumptions, Plaintiff presented no substantive evidence that he is entitled to any of these computations.

27. The making of the jeopardy assessments against the Plaintiff was reasonable under the circumstances and the amount assessed was appropriate under the circumstances.

Accordingly, after due consideration, it is

ADJUDGED that Final Judgment pursuant to the Findings of Fact and Conclusions of Law set forth above be and the same is hereby entered in favor of the Defendant, United States of America, and against the Plaintiff, Jerry Lee Harvey, and the Plaintiff shall take nothing by this action and the Defendant shall go hence without day, each party to bear its own costs.

DONE AND ORDERED.