German CANTILLO, Plaintiff,

v.

Cornelius J. COLEMAN, District Director, Internal Revenue, Defendant.

Civ. A. No. 82–2733.

United States District Court, D. New Jersey.

Jan. 18, 1983.

Arthur J. Maurello, Hillsdale, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty., Newark, N.J. by Steven R. Toscher, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

CLARKSON S. FISHER, Chief Judge.

This is an action commenced by plaintiff, German Cantillo, pursuant to section 7429 of the Internal Revenue Code of 1954 (the Code) requesting the court to determine the reasonableness of the making and the amount of a termination assessment for the taxable period from January 1 through May 27, 1982. After hearing the testimony offered at trial and reviewing the written evidence, the court makes the following findings of facts and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

Plaintiff is an illegal alien[1] residing in Miami, Florida, with his wife, an American citizen. He has applied to become a legal resident of the United States.

On or about May 26, 1982, plaintiff was arrested by the New Jersey State Police and charged with a violation of N.J.S.A. 24:21–20(a)(1), possession of a controlled dangerous substance (cocaine). Incident to the arrest, the police seized $56,200 in cash ($1,300 found in his possession and $54,900 found in a leather case in the trunk of his car). Plaintiff claimed that the money found in the case constituted his winnings from an illegal Puerto Rican lottery.

At a subsequent interview with the Internal Revenue Service agents, plaintiff admitted to earning substantial amounts of taxable income during the years 1978, 1979, 1980 and 1981. He conceded, however, that he had not filed income-tax returns for these years because he did not want to pay federal income taxes. At the time of his arrest plaintiff, in fact, asserted that he was driving from New York to Florida in a friend's car (rather than flying) in order to avoid the risk of having to disclose the large amount of cash in his possession.

During 1982 plaintiff maintained two apartments in Miami. He has admitted to paying (in cash) at least $4,475 in rent on these dwellings. He sent $750 each month (January through May 1982) to his mother and brother in Colombia. In March through May 1982 he made cash payments of approximately $10,000 for an automobile, furniture and clothing. Plaintiff, who claims to make his living as a house painter, told IRS agents that due to lack of business he earned no money in 1982.

Pursuant to sections 6851, 6861 and 6862 of the Code, the IRS issued a jeopardy assessment for the period from January 1 through May 27, 1982.[2] Pursuant to these sections, if the IRS discovers that the collection of taxes is in jeopardy, it must immediately determine the amount of taxes due, make an assessment and serve notice of assessment and demand for payment upon the taxpayer. Plaintiff in this instance asserts (1) the making of the assessment was unreasonable; and (2) even if the making of the termination assessment was reasonable, the amount assessed was inappropriate.

As a threshold argument, defendant asserts that plaintiff's request to the IRS for administrative review did not comply with the requirements of section 7429(a) of the Code. Specifically, defendant argues that the request did not contain a significantly detailed explanation of the "grounds" upon which plaintiff was seeking review. This contention is unpersuasive, especially in view of the fact that the IRS responded to plaintiff's request.

 The Government has the burden of proving that the assessment in question was reasonable. 26 U.S.C. § 7429(b)(2). The standards to be employed by a reviewing court in determining whether an assessment is reasonable are (1) the taxpayer is or appears to be planning to quickly depart from the United States to conceal himself; (2) the taxpayer is or appears to be designing to place his property beyond the reach

---

1. Plaintiff entered this country illegally in August 1977.

2. Cantillo has withdrawn his request for review of the jeopardy assessment for taxable years 1979, 1980 and 1981.

of the government either by removing it from the United States or by concealing it, or by transferring it to other persons, or by dissipating it; or (3) the taxpayer's financial solvency appears to be imperiled. *See French v. United States,* 79–2 U.S.T.C. para. 9538 (E.D.Okla.1979).

Thus the Government need only establish that the taxpayer's circumstances *appear* to be jeopardizing collection of a tax—not whether they definitely do so. The reviewing court's standard for an assessment's reasonableness is something more than not arbitrary and capricious, and something less than supported by substantial evidence. *Loretto v. United States,* 440 F.Supp. 1168, 1172 (E.D.Pa.1977). In making this determination courts have considered among other factors (1) whether the taxpayer appears to have been engaged in illegal business activity, *Robinson v. Boyle,* 80–2 U.S.T.C. para. 9524 (E.D.Va.1980); (2) the taxpayer's failure to report substantial amounts of income on his tax returns, *Robinson v. Boyle, Id.;* or (3) the taxpayer's possession of cash which does not correlate with previous reported income. *Brogan v. United States,* 81–1 U.S.T.C. para. 9105 (N.D.Fla.1980). Taking these factors into account, it is clear that the termination assessment in the instant case was reasonable.

The Government has failed to present any specific evidence to support its contention that plaintiff obtained his funds from drug trafficking activity. Nevertheless, it has demonstrated an aversion on the part of the taxpayer toward voluntary compliance with the federal income tax laws and regulations. *Zion Coptic Church Inc. v. United States,* 79–1 U.S.T.C. para. 9325 (S.D.Fla. 1979). Plaintiff's possession and expenditure of large amounts of cash with no legal origin which he can explain, at the least makes it appear that he has been engaged in an illegal activity.[3] While the available evidence might not be sufficient to convict plaintiff of specific charges in a criminal

proceeding, the broad discretion given to the IRS by the relevant Code regulations permits it to make such a determination. In addition, plaintiff's wilful concealment of funds and attempts to avoid tax liability in the past indicate that there would indeed be jeopardy in trying to collect his taxes in the ordinary manner. *Abercrombie v. United States,* 80–2 U.S.T.C. para. 9681 (D.S. Car.1980).

As the IRS's termination assessment in and of itself was reasonable, plaintiff has the burden of showing that the amount of liability is inappropriate. In this instance, Cantillo complains that his liability should have been computed using joint-return rates which would allow him exemptions for his wife and her children and also the use of income averaging. The reviewing court's duty is merely to determine whether the amount assessed is appropriate and not to ascertain the correct amount of liability. *Haskins v. United States,* 444 F.Supp. 299, 304 (C.D.Cal.1977). Therefore, plaintiff can bring these claims in a subsequent proceeding to determine the correct tax liability, be it an action for refund in a United States District Court or the United States Court of Claims, or by a proceeding in the United States Tax Court. The method of computation appears reasonable in all respects and plaintiff has not met his burden of proving its inappropriateness.

The Government has demonstrated sufficiently that its assessments were reasonable in the given circumstances. Plaintiff, however, has failed to show that defendant's computation of his tax liability was manifestly incorrect. Therefore, this court will not make a separate determination of his tax liability. Judgment will be entered in favor of defendant. The Government will submit an order within five days. No costs.

---

**3.** Cantillo's assertion that he "won" the money in a lottery strains credulity, to say the least, in view of his almost complete inability and/or unwillingness to explain any aspect of the alleged contest.