Garvey Martin CHEEK and Judy Cheek, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Garvey M. CHEEK, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Judy CHEEK, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Nos. ST–C–84–92 to ST–C–84–94.

United States District Court,
W.D. North Carolina,
Statesville Division.

July 12, 1984.

Herman Wolff, Jr., Wolff & Martin, Raleigh, N.C., and J. Gary Vannoy, Vannoy, Moore & Colvard, North Wilkesboro, N.C., for plaintiffs.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., and Steven Shapiro, Chief, Civ. Trial Sec., Southern Region, U.S. Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

These three civil actions were brought by the plaintiffs pursuant to 26 U.S.C. § 7429 to review jeopardy assessments made by the Internal Revenue Service. A hearing was conducted on June 19, 1984. The court, having considered all the pleadings, memoranda, evidence, and arguments of counsel, makes the following

## FINDINGS OF FACT

1. On March 9, 1984, jeopardy assessments of income taxes for the years 1975, 1976, and 1978, in the total amount of $171,878.79, were made against plaintiffs Garvey M. Cheek and Judy Cheek, jointly.

2. On March 9, 1984, jeopardy assessments of income taxes for the years 1979, 1980, 1981, and 1982, in the total amount of $61,767.59, were made against plaintiff Judy Cheek.

3. On March 9, 1984, jeopardy assessments of income taxes for the years 1975*, 1976*, 1978, 1979, 1980, 1981, and 1982 in the total amount of $527,624.50 were made against Garvey M. Cheek, Jr. (*Section 6653(b) penalty only).

.4. By letters hand delivered on March 12, 1984, and mailed by certified mail March 14, 1984, plaintiffs were given notice of the jeopardy assessments made against them and were provided with the written statement and computations required by Internal Revenue Code Section 7429(a)(1). The letter dated March 12, 1984, was signed by "James E. Gambel, Group Manager." The letter dated March 14, 1984, was signed by "Lee R. Monks" who was the Acting District Director. These letters also informed the plaintiffs of their rights to administrative and judicial review of the jeopardy assessments.

5. On April 11, 1984, the plaintiffs requested an administrative review by the Internal Revenue Service of the jeopardy assessments made against them.

6. After administrative review, the Commissioner of Internal Revenue determined that the making of the jeopardy assessments was reasonable under the circumstances and that the amounts assessed were appropriate under the circumstances. On April 30, 1984, this determination was mailed to the plaintiffs in the form of an "Appeals Transmittal Memorandum and Supporting Statement" and an attached let-

ter. Both documents were presented by Judy Montgomery, an appeals officer, to Larry Davis, the Associate Chief of the Appeals Office, for final approval. The Associate Chief then dated the documents and authorized them to be sent out to the plaintiffs.

7. Thereafter, on May 23, 1984, the plaintiffs filed three complaints in this court seeking review of jeopardy assessment. The plaintiffs failed to serve a summons or process upon the United States. However, the United States, through its attorney, consented to personal jurisdiction for the purposes of this hearing.

8. On April 26, 1983, plaintiff Garvey Martin Cheek, Jr. pleaded guilty in United States District Court, Statesville, North Carolina, to income tax evasion for the tax years 1978 and 1979.

9. On or about March 27, 1984, a grand jury sitting in the Western District of North Carolina indicted Garvey Martin Cheek, Jr. for drug charges and continuing criminal enterprises from August, 1978, to April, 1980. These charges included a conspiracy with others to unlawfully possess and distribute cocaine and marijuana.

10. The plaintiffs had extensive dealings in large amounts of cash. For example, in the recent indictment referred to above, the grand jury found that in November or December, 1979, Garvey Martin Cheek, Jr., paid someone $500,000 in cash for the purchase of marijuana. Also, the Revenue Agent, Lenny Smathers, testified that cash was used by plaintiffs to purchase two Ferrari automobiles, an airplane ($49,000), and four trucks ($29,823.57), and that Garvey Martin Cheek, Jr., made a $50,000 cash loan to Gary T. York in currency with no formal contract drawn relative to repayment.

11. Plaintiffs failed to file tax returns for the tax years 1979, 1980, 1981 and 1982.

12. Plaintiffs have consistently refused to cooperate with the Internal Revenue Service by failing to provide financial information concerning their property holdings, cash bank accounts, drug involvement, and other financial matters, and by refusing to answer questions.

13. The plaintiffs have acquired large amounts of property over the years in question, causing a large unexplained increase in their net worth. Similarly, the income, if any, reported by the plaintiffs was markedly less than the value of the assets they purchased. For example, the plaintiffs acquired the following assets from 1975 to 1978 with a net worth increase of $224,798.42:

| | |
|---|---|
| Purchase of Beech Mountain residence, North Carolina | $121,370.28 |
| Purchase of Miami residence, Florida | 130,170.00 |
| Assets of S & M Leasing Co. | 78,823.57 |
| Purchase of automobiles | 30,729.25 |
| Investment in Cheek's Market | 25,767.35 |

14. Plaintiffs held a substantial amount of property in the name of two nominees, Charlotte Sean Fowlkes and S & M Leading Co. Garvey M. Cheek, Jr. purchased the two Ferrari automobiles and the residence in Miami, Florida, and put the title to them in Ms. Fowlkes' name. Ms. Fowlkes readily admitted that Garvey M. Cheek, Jr., was the actual owner of this property.

15. Plaintiffs appear to be dissipating their assets. Although Garvey M. Cheek, Jr. is in prison, he has issued an all-encompassing power of attorney to his wife, Judy Cheek. From September, 1983, to February, 1984, Mrs. Cheek has issued deeds of trust and sold five pieces of property. Net proceeds from these transactions totaled $185,781. When questioned by Revenue Agent Lenny Smathers about these proceeds, Mrs. Cheek stated that she used them to pay bills. No further explanation was forthcoming from either of the plaintiffs. The failure of Mrs. Cheek to specify the whereabouts of more than $185,000 is representative of bad faith and shows an increased likelihood that the plaintiffs will dissipate their remaining assets before the Internal Revenue Service can complete their normal collection procedures.

## CONCLUSIONS OF LAW

1. The Western District of North Carolina has subject matter jurisdiction

over this summary proceeding pursuant to 26 U.S.C. Section 7429(b)(1). Although the plaintiffs failed to request a timely hearing so that the court was unable to comply with the twenty-day determination requirement of 26 U.S.C. Section 7429(b)(2), the court's jurisdiction over this action remains unaffected. *See Meadows v. United States*, 665 F.2d 1009 (11th Cir.1982).

2. Although the plaintiffs failed to serve any process or summons upon the defendant, United States, the United States, through its attorney, has consented to personal jurisdiction for the purposes of this action. *See, e.g., Neifeld v. Steinberg*, 438 F.2d 423 (3d Cir.1971); *Ruggieri v. General Well Service, Inc.*, 535 F.Supp. 525 (D.Colo.1982).

3. Each notice of jeopardy assessment and right of appeal was properly sent to the plaintiffs within five days as required by law. 26 U.S.C. Section 7429(a)(1).

4. The Internal Revenue Service properly reviewed the making of the jeopardy assessments and properly notified the plaintiffs that the assessments were sustained. 26 U.S.C. Sections 7429(a)(3), 7429(b)(1)(A).

5. The making of the jeopardy assessments pursuant to 26 U.S.C. Section 6861 was reasonable under the circumstances. 26 U.S.C. 7429(b)(2)(A). Factors leading to this conclusion are stated in the findings of fact and are summarized here as follows: Garvey M. Cheek, Jr.'s guilty plea to tax evasion in 1978 and 1979 and both his and Judy Cheek's failure to file tax returns from 1979 to 1982 are strong evidence of a history of tax evasion and suggest the possibility of further tax evasion; Garvey M. Cheek, Jr.'s present indictment for drug charges; Mr. Cheek, Jr.'s extensive dealings in large amounts of cash in order to hide traces of his financial dealings; plaintiffs' unexplained increases in net worth through the surreptitious purchase of large amounts of property; and plaintiffs' apparent dissipation of many of their assets, are sufficient to show the reasonableness of the jeopardy assessment.

6. The amount assessed under 26 U.S.C., Section 6861, was appropriate under the circumstances. 26 U.S.C., Section 7429(b)(2)(B). The plaintiffs failed to meet their burden in proving that the amount of the assessment was inappropriate. 26 U.S.C. Section 7429(g)(2). Since the plaintiffs' books and records did not reflect the value of assets acquired so as clearly to reflect their income, the net worth expenditures method was used by the Internal Revenue Service to compute their correct adjusted gross income. This procedure is authorized by law and is normally applied in circumstances such as are present in this case. 26 U.S.C. Section 446(b). Plaintiffs failed to present any probative evidence to refute the amounts assessed. Though they did submit the affidavit of Judy Cheek, this affidavit was signed by Judy Cheek and notarized on the morning of the trial at a location only several feet from the courtroom. Since Mrs. Cheek was clearly able to appear at the hearing and be subject to cross-examination, her affidavit must be given little, if any, weight. The amounts assessed appear to be appropriate under the law and stand in the absence of any evidence to the contrary. *See Revis v. United States*, 558 F.Supp. 1071, 1079 (D.R.I.1983); *Loretto v. United States*, 440 F.Supp. 1168, 1172 n. 7 (E.D.Pa.1977).