**Elena Zahos BURD, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 91–3264 (CSF).**

United States District Court, D. New Jersey.

Oct. 8, 1991.

**904**

Mortenson and Associates, P.C. by Charles Edward Falk, Cranford, N.J., for plaintiff.

Michael Chrertoff, U.S. Atty. by Susan Cassell, Asst. U.S. Atty., Newark, N.J., Beverly A. Moses, Richard L. Gilman, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Before this court is a motion by plaintiff, Elena Zahos Burd, to deny the United States' motion for summary determination and in support of plaintiff's motion for summary determination. The issue presented in this action is whether the Internal Revenue Service's jeopardy assessment pursuant to 26 U.S.C. § 6862 was reasonable under the circumstances. For the following reasons, the court determines that the jeopardy assessment was not reasonable under the circumstances and, therefore, the defendants' motion for summary determination is denied and the plaintiff's motion for summary determination is granted.

Elena Zahos Burd ("plaintiff"), was formerly married to James Zahos ("Zahos"). Complaint ¶ 6. Plaintiff and Zahos filed a 1987 joint federal income tax return. *Id.* at ¶ 6. In 1988, plaintiff filed a "married filing separately" federal income tax return. *Id.* at ¶ 7. On June 5, 1991, the Internal Revenue Service ("IRS") made a "jeopardy assessment" against the plaintiff of $26,900.52 for the tax year 1987. *Id.* at ¶ 9. Additionally, that same day, the IRS made a "jeopardy assessment" against the plaintiff for $3,072.73 for the tax year 1988.

Also, on June 5, 1991, the IRS made a "jeopardy assessment" of $18,262.00 against the plaintiff based on transactions conducted between plaintiff as transferee and Zahos Pools, Inc. as transferor for the taxable years 1987 and 1988. Complaint ¶ 11. Zahos was a 98% shareholder of Zahos Pools, Inc. Plaintiff Aff. ¶ 9. Plaintiff was a 1% shareholder in the corporation. *Id.* The other 1% belonged to the incorporating attorney. *Id.* All of the foregoing tax assessments were made by the IRS pursuant to the recommendations of Agent Elaine Durning of the IRS's Newark, New Jersey, office. *See* Durning Certif. The recommendations were made by Agent Durning because of certain information she received during the course of her inquiry into the corporation's tax liability.

Agent Durning met with plaintiff in June of 1990. At that meeting plaintiff told Durning that corporate funds were not used to pay personal expenses but that if a personal check was unavailable corporate funds might be used to pay personal expenses and the corporation would be reimbursed. *Id.* at ¶ 7. Plaintiff explained that if no reimbursement occurred, the expenses would not be deducted by the corporation as business expenses, and a bonus would be declared by the corporation and reflected on the plaintiff's tax returns. *Id.* Upon examination of the corporate records, however, Agent Durning found that for the years 1987 and 1988 plaintiff used corporate funds to pay personal expenses, plaintiff did not reimburse the corporation, the corporation deducted the expenses as business expenses and plaintiff never declared a bonus on her tax returns. *Id.* The amount of the tax liability is not an issue before this court.

In September of 1990, a divorce decree was entered in the Superior Court of New Jersey, Family Part, Hunterdon County, between plaintiff and Zahos. Pursuant to the divorce decree, plaintiff was awarded the Zahos' marital home. *Id.* at ¶ 11. In November of 1990, Zahos informed Agent Durning that the plaintiff had listed the house for sale and that plaintiff was planning on moving to Japan to live with her brother. *Id.* at ¶ 12. Agent Durning confirmed that the house was on the market but did not attempt to ascertain whether

plaintiff was planning on moving to Japan. On April 29, 1990, Agent Durning learned that the plaintiff's house, her "only known asset" would be sold for the purchase price of $395,000. *Id.* at 13. Agent Durning states:

> Since Elena Zahos was about to convert her only known asset (her house) to cash (there was no indication that the proceeds from the sale would be converted into something other than cash) and quite possibly move to Japan, I determined that collection of the taxpayers deficiencies would be in jeopardy if there was not an immediate assessment, especially in light of Ms. Zahos' history of participation in, and having knowledge about, the diversion of corporate assets and use of corporate funds to pay personal expenses.

*Id.* at ¶ 15.

Based on this information, Agent Durning determined that a jeopardy assessment under 26 U.S.C. § 6861 was necessary. Durning Certif. at ¶ 15. The District Director approved this recommendation on June 4, 1991. *Id.* at ¶ 16. On June 5, 1991, the IRS sent plaintiff a Notice of Jeopardy Assessment and Right of Appeal. *Id.* at 17. On June 6, 1991, one day after the jeopardy assessment was made against plaintiff, plaintiff conveyed to her daughter Christine DeFino title to her house for $345,000. *Id.* at ¶ 18. On June 17, 1991, Agent Durning learned that the property was conveyed by her daughter to a third party. *Id.*

Generally, if the IRS makes a determination that a tax is due to the United States Government by a taxpayer, it may make an assessment as to the amount owed and bring an action to collect that amount. Under normal assessment procedure, there is usually a considerable lapse of time between a taxpayer's first notice that the IRS is seeking to collect the tax and the actual enforced collection of the tax. This is due in part to the taxpayer's right to contest, in the United States Tax Court, whether a tax is owed and the amount of the tax owed.

When the IRS, however, determines that the collection of a tax may be in jeopardy, it may forego the normal time-consuming collection process and immediately assess and collect the tax by way of a jeopardy assessment procedure provided for in 26 U.S.C. § 6862. Under the statute if the IRS determines that the assessment or collection of the tax would be jeopardized by delay, the IRS is authorized to immediately assess and levy upon the taxpayer's property. The taxpayer then is forced to litigate the merits of the assessment and the amount of such assessment after the tax has already been collected.

Realizing the drastic nature of this proceeding, Congress concluded that the taxpayer should be able to obtain immediate judicial review of the propriety of the jeopardy assessment. 26 U.S.C. § 7429. Section 7429 empowers the taxpayer to bring an action in the district court for review of the IRS's determination. The district court will make *de novo* determinations as to whether the IRS's making of the jeopardy assessment was reasonable under the circumstances, and whether the amount assessed is appropriate under the circumstances. The government bears the burden of proving the reasonableness of the jeopardy determination and the plaintiff bears the burden of proof as to the amount of such determination. 26 U.S.C. § 7429(g).

In this case, the plaintiff does not challenge the amount of the assessment, and the court is precluded from addressing the merits of the tax liabilities owed by the plaintiff. Therefore, the only issue presented is whether the IRS's jeopardy assessments were reasonable under the circumstances. It should be noted that the IRS must show by a preponderance of the evidence presented to the court that the assessment was reasonable under the circumstances. *Northeast Chemical, Inc. v. I.R.S., Dept. of Treasury,* 48 A.F.T.R.2d 81–5801 (W.D.N.Y.1981). Because the IRS has not carried its burden, and because the plaintiff has demonstrated that the IRS's actions were not reasonable under all of the circumstances of this case, the plaintiff's motion for summary determination is granted, and the defendant's motion for summary determination is denied.

In assessing the reasonableness of the IRS's actions, the Court is not limited to consideration of the information available to the IRS at the time of the assessment but must also consider any subsequently available information that might impact on the reasonableness of the determinations. "[A]ny relevant information should be considered." *Loretto v. United States*, 440 F.Supp. 1168, 1173 (E.D.Pa. 1977). Additionally, the court may evaluate evidence that would normally be precluded by the Federal Rules of Evidence. *Billig v. United States*, 49 A.F.T.R.2d 82–479 (N.D.Ga.1981).

The "reasonableness under the circumstances" standard is often tough to define. Judge Luongo of the Eastern District of Pennsylvania described the standard. " 'Reasonableness under the circumstances' means something more than 'not arbitrary or capricious,' and something less than 'supported by substantial evidence.' " *Loretto*, 440 F.Supp. at 1172.

Defendant correctly urges the court to evaluate the IRS's actions under the circumstances by looking to the information that the IRS had available to it, even if such information came from third-party statements that would be inadmissible in a trial on the merits of the tax liability. Defendant's Brief p. 6 (citing *Nichols v. United States*, 43 A.F.T.R.2d 79–835, 836 (E.D.Cal.1978); *Noell v. United States*, 43 A.F.T.R.2d 79–1194 (S.D.Cal.1979); *Santini v. United States*, 43 A.F.T.R.2d 79–885 (N.D.Cal.1979); *Erath v. United States*, 43 A.F.T.R.2d 79–1192 (S.D.Cal.1979); *Haskin v. United States*, 444 F.Supp. 299 (C.D.Cal. 1977); *Loretto*, 440 F.Supp. at 1168; *McAvoy v. IRS*, 475 F.Supp. 297 (W.D.Mich. 1979); *Bremson v. United States*, 459 F.Supp. 121 (W.D.Mo.1978)). The plaintiff agrees with the defendant's standard. Plaintiff's Brief p. 5 (quoting *Northeast Chemical*, 48 A.F.T.R.2d at 5802. ("[T]he IRS does not have to prove the substantive correctness of the assessments and need not restrict itself to normally admissible evidence.")).

Therefore, this court, in evaluating the reasonableness of the IRS's jeopardy assessment, will look at all of the facts and circumstances of the case. Defendant explains that "the United States need only establish that the taxpayer's circumstances appear to be jeopardizing collection of a tax—not whether they definitely do so." Defendant's Brief at p. 8 (quoting *Cantillo v. Coleman*, 559 F.Supp. 205, 207 (D.N.J.1983)). The IRS has issued standards for invoking the jeopardy assessment procedure. The Internal Revenue Manual provides:

> In determining whether a jeopardy assessment will be made, at least one of the following conditions ... must exist. The conditions are:
>
> (a) the taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself;
>
> (b) the taxpayer is or appears to be designing quickly to place his or its property beyond the reach of the government, either by removing from the United States, by concealing it, by dissipating it, or by transferring it to other persons;
>
> (c) the taxpayer's financial solvency is or appears to be in peril.

IRS Manual § 4584.2(1).

The IRS asserts that a finding of any one of the above three conditions would support the government's determinations. Defendant's brief at p. 9 (citing *Fidelity Equipment Leasing Corp. v. United States*, 462 F.Supp. 845, 849 (N.D.Ga. 1978)). Moreover, the I.R.S. argues that if the taxpayer has engaged in illegal business activity, has failed to report substantial amounts of income, or possesses cash that does not correlate with previous reported income, a jeopardy assessment is reasonable. *Id.* (citing *Cantillo v. Coleman*, 559 F.Supp. 205 (D.N.J.1983)).

The information possessed by Agent Durning, if looked at in a vacuum, may have prompted the agent to believe that the plaintiff was attempting to depart from the United States or that she appeared to be transferring property to her daughter to place her assets beyond the reach of the government. This court, however, is required to evaluate the reasonableness of

the IRS's determinations by looking at *all* of the facts and circumstances involved in this case. *Billig v. United States,* 49 A.F.T.R.2d 82–479, 480 (N.D.Ga.1981) ("Neither the Internal Revenue Service nor the [d]istrict [c]ourt is limited to information available at the time of the original assessment; in making its determination the [d]istrict [c]ourt may rely on, and the United States may present evidence with respect to, any information which becomes available after making the assessment."); *Robinson v. Boyle,* 46 A.F.T.R.2d 80–5078, 5079 (E.D.Va.1980) ("The [c]ourt must consider any pertinent information that subsequently becomes available."); *Nichols,* 43 A.F.T.R.2d at 79–836 ("The court in making its independent determinations, is to take into account not only information available to the Internal Revenue Service on the assessment date, but also any information which bears on the issues before it."). A review of the facts and circumstances of this case reveals that the IRS's determinations were not reasonable. The IRS relied on the uncorroborated statement of the plaintiff's ex-husband for the information about the plaintiff's leaving the United States. Moreover, the plaintiff had a rational justification for transferring the legal title of her home to her daughter. If the IRS had conducted a simple investigation there would have been absolutely no basis for the jeopardy assessment.

Initially, the IRS presents the reasons why the tax is owed, but does not present evidence demonstrating that a jeopardy assessment was necessary. Agent Durning believed that the plaintiff and Zahos were the sole owners of Zahos Pools, Inc. Zahos, however, was a 98–percent owner of the corporation, and in the divorce action New Jersey Superior Court Judge Herr found that plaintiff had control over neither the business operations of the corporation nor the corporate funds. Judge Herr opinion p. 11.

■ Additionally, Agent Durning believed that during the years 1987 and 1988 plaintiff and Zahos diverted corporate funds to pay personal expenses. As previously noted, plaintiff had virtually no con-

trol over the assets of the corporation or over the family finances. Agent Durning also knew that personal expenses were paid for by the corporation, but that the plaintiff did not report this payment on her income tax returns for 1987 and 1988. It should be noted that plaintiff and Zahos filed a "joint tax return" in 1987. Agent Durning believed that the plaintiff purposely misrepresented her income in order to avoid paying taxes. It is reasonable to assume that the plaintiff's statements that the corporation would be reimbursed for personal expenses may have been based on information that the plaintiff received from her husband. Additionally, even if the plaintiff knew that she was required to report as income the corporation's payments of her personal expenses and failed to do so, and even if this may reveal her intention to misrepresent her income and avoid paying taxes, this does not provide the IRS with the justification for a jeopardy assessment. Rather, these are precisely the issues that are to be pursued in the United States Tax Court to assess the tax liability of the plaintiff.

Agent Durning did possess some facts that might have provided a reasonable justification for a jeopardy assessment. If the agent had conducted even a minimal investigation, however, the agent would have determined that the tax payment was not in jeopardy. It was Zahos who told Agent Durning that the plaintiff was attempting to convert her home to cash through sale and was moving to Japan to live with her brother. There is no evidence, however, that Agent Durning undertook an investigation to corroborate the validity of this information, received from Zahos, the plaintiff's ex-husband. The IRS should have determined if Zahos was simply "carrying out the threat to destroy his business and leave his wife with no home." Judge Herr opinion p. 10. It appears that if Agent Durning had conducted such an investigation she would have discovered that plaintiff does not hold a valid passport, has remarried and has settled down in Bedminster, New Jersey, and is working at a job for the U.S. Golf Association in Far Hills, New Jersey. Instead, Durning did not

even contact the plaintiff to ascertain the veracity of Zahos's allegations.

Further, the IRS asserts that Agent Durning learned on June 6, 1991, one day after the jeopardy assessment was made against the plaintiff, that plaintiff transferred title to her house to her daughter, Christine DeFino. Additionally, in looking at all the circumstances of this case, it is apparent why legal title to the house was transferred to her daughter, Christine De-Fino. In September of 1990, Zahos filed a *lis pendens* against the marital home to prevent the plaintiff from selling the house. Therefore, upon the advice of counsel plaintiff transferred legal title to DeFino.

Moreover, the IRS explains that Agent Durning learned that on June 17, 1991, the property was sold by the daughter to a third party. If the IRS had investigated the sale, the investigation would have revealed that the plaintiff was engaged to be married at the time and was planning on moving into her husband's home. Additionally, plaintiff was left with only the house after her twenty-eight-year marriage to Zahos. Judge Herr opinion, p. 12. She was "granted full power and authority to list and sell the property in her name only and to transfer the property in her name only." *Id.* It does not appear that she pursued this course of action to avoid the payment of taxes. The case of *French v. United States*, 44 A.F.T.R.2d 79–5653 (E.D.Ok.1979) is instructive. In upholding a jeopardy assessment, the *French* court concluded that the plaintiffs had transferred all of their real property to their children "in order to put it beyond the reach of the government." *Id.* at 79–5654. The court reached this result because the plaintiffs failed to offer evidence to explain their actions. *Id.* In this case, plaintiff has offered evidence which provides a rational justification for her conveyance to her daughter. The IRS, if it had investigated the situation, would have realized that plaintiff was not attempting to put the proceeds from the sale out of the reach of the government.

In view of all of the circumstances of this case, the IRS's belief that the tax money was in jeopardy is unreasonable. This court can envision, and the IRS points to, many cases where a jeopardy assessment is reasonable. *Billig*, 43 A.F.T.R. at 82–479, 480 (plaintiff was in possession of $106,000.00 in cash and one ounce of marijuana and had at least four different addresses); *Robinson*, 46 A.F.T.R.2d at 80–5079 (convicted felon and fugitive charged with operating business that secured merchandise under false representations assigned all rights in his property to his attorney); *Noell*, 43 A.F.T.R.2d at 79–1196 (drug smuggler, who possessed and recently used passport assigned bank account to attorney); *Nichols*, 43 A.F.T.R.2d at 79–836 (jeopardy assessment made against money obtained from drug trafficking where defendant attempted to transfer all moneys seized during her arrest to her attorney); *Erath*, 43 A.F.T.R.2d at 79–1193 (plaintiff was in the business of selling drugs, had used illegal aliases, had traveled abroad recently, and had transferred most of his assets to his attorney); *Canon v. United States*, 40 A.F.T.R.2d 77–5529 (D.Nev.1977) (plaintiff was operating an illegal bookmaking operation). This case is dissimilar.

Moreover, the IRS Manual states that "[j]eopardy assessments should be used sparingly, and care should be taken to avoid excessive and unreasonable assessments." IRS Manual § 4584.2(2). The manual also depicts situations where jeopardy conditions may arise. These situations include:

(a) narcotic cases

(b) cases involving taxpayers engaged in organized crime

(c) wagering cases

(d) Strike Force cases

(e) cases involving taxpayers who are reasonably believed to be receiving income from illegal activity

(f) cases involving taxpayers known or suspected of having plans for leaving the United States without making provisions for payment of their taxes (i.e.,

aliens generally considered as border hoppers)

(g) cases where an individual in physical possession of cash, or its equivalent, in excess of $10,000.00 and does not claim such cash as his/hers, or as belonging to another person whose identity the Secretary can readily ascertain and who acknowledges ownership of such cash, then the collection of tax on such cash is presumed to be in jeopardy within the meaning of Code section 6867.

IRS Manual § 4584.2(3).

While it is true that the situations enumerated above are not an exclusive list of the situations in which a jeopardy assessment can be made, the list is illustrative of the types of situations where jeopardy procedures should be used. This case is not one of them.

Here, the IRS made the jeopardy assessment based primarily on the uncorroborated statements of Zahos, the plaintiff's ex-husband. It appears that the plaintiff is a victim of her ex-husband's attempt to exploit the IRS to achieve his personal aims. In fact, Zahos sent to his daughter, Cathy Zahos, a note that states, "P.S. Tell your mother to get the same attorney that Jim Bakker had and you all can use him. God bless the I.R.S." Zahos signed the note, "Satan." This court will not countenance this unseemly character's attempt to utilize the IRS for his untoward aims.

The IRS should have, at minimum, contacted the plaintiff and, at maximum, conducted an investigation to ascertain the reasonableness of their fears that the tax payment was in jeopardy. The IRS did neither. Their actions were unreasonable, and, therefore, the jeopardy assessment was not reasonable under the circumstances.

For the reasons stated above, the jeopardy assessment was not reasonable under the circumstances, and, therefore, the defendant's motion for summary determination is denied, and the plaintiff's motion for summary determination is granted. No costs.