Claude GUILLAUME, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 02–60105CIVMARTINEZ.

United States District Court,
S.D. Florida,
Miami Division.

Aug. 28, 2003.

Mitchell S. Fuerst, Rodriguez, O'Donnell, Ross, Fuerst, et al, Miami, FL, Rodriguez, O'Donnell, Fuerst, Gonzalez & Williams, Washington, DC, for Plaintiff.

Jose Francisco De Leon, Deborah M. Morris, United States Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Claude Guillaume's Petition for Determination and Review of Notice of Termination Assessment and Jeopardy Levy (D.E. No. 1). For the reasons set forth below, the Court finds the termination assessment is reasonable and the amount assessed is appropriate under the circumstances of this case.

### I. Background

On March 2, 2001, Petitioner Claude Guillaume was arrested on charges of trafficking in cocaine (Joint Pretrial Stipulation ["JPTS"], Docket Entry Number ["D.E. No."] 42 at ¶ V(1)).[1] Law enforcement officials seized four (4) kilograms of cocaine from the car he was driving and approximately $2.7 million from his residence. *Id.* at ¶ V(2). Petitioner ultimately pled guilty to charges of trafficking in cocaine. *Id.* at ¶ V(13). On or about March 6, 2001, The Homestead Police Department notified the Internal Revenue Service ["IRS"], through its agent Arthur Brake, regarding the details of this arrest and seizure. *Id.* at ¶ V(3). The City of Homestead filed a Complaint for forfeiture of the money seized from the residence

[hereinafter "the forfeiture case"], and Petitioner filed a third-party complaint alleging a violation of his constitutional rights. *Id.* at ¶ V(4); *see also* Case No. 01–7145–CIV–Ferguson/Snow. After a settlement agreement was reached in the forfeiture case, the Court entered a Final Judgment and Order of Forfeiture on September 24, 2001. *Id.* at ¶¶ V(4), V(5).

On October 3, 2001, the IRS made a termination assessment against Petitioner for the period ending March 31, 2001 (JPTS at ¶ V(7)). In addition to the information provided by the Homestead Police, in considering this assessment, the IRS examined Petitioner's reported taxable income. Specifically, Petitioner's tax returns for the years 1996 through 1999 reflect the following:

| Tax Year | Gross Receipts | Net Profit | AGI |
|---|---|---|---|
| 1996 | N/A | $14,326 | $13,314 |
| 1997 | $17,373 | $12,848 | $13,064 |
| 1998 | $11,200 | $ 9,225 | $ 8,574 |
| 1999 | $26,350 | $24,025 | $22,328 |

*Id.* at ¶ V(10).

In computing the amount of the termination assessment, the IRS based Petitioner's income on the amount of currency seized plus the value of the seized cocaine, which totaled $2,654,137.00. *Id.* at ¶ V(8). From that total, the IRS adjusted the amount for a self-employment tax deduction in the amount of $40,526.00 and a standard deduction of $4,550.00. *Id.* The IRS applied the tax rate for a single individual, resulting in a tax liability of $998,604.00. Respondent added self-employment tax in the amount of $81,052.00, for a total balance due of $1,079,656.00. *Id.*

The IRS served a levy on the City of Homestead on October 3, 2001 for $1,079,656.00 (JPTS at ¶ V(9)). The City of Homestead paid the requested amount to the IRS. *Id.* Subsequent to this transfer,

---

**1.** The background facts are largely undisputed; therefore, such facts will be taken from the JPTS, unless otherwise noted.

Petitioner furnished income tax reports for 2000 and 2001 that reflect the following:

| Tax Year | Gross Receipts | Net Profit | AGI |
|---|---|---|---|
| 2000 | $328,847 | $44,441 | $41,301 |
| 2001 | $465,417 | $67,102 | $62,361 |

*Id.* at ¶ V(11). On January 24, 2002, Petitioner, after exhausting his administrative remedies, filed a petition with this Court contesting the termination assessment. *Id.* at ¶ V(12).

## II. Termination Assessment

 A "termination assessment" is a special tax assessment where more routine methods of collection might be ineffective or substantially jeopardized if collection efforts are delayed and is authorized under Title 26 of the United States Code. 26 U.S.C. § 6851. A termination assessment is made for a tax year that has not yet ended or for a tax year that has ended but for which the due date for filing the required return has not passed. *Id.; see also Nolan v. United States,* 539 F.Supp. 788, 789 (D.Ariz.1982).[2] Section 6851(a)(1), Title 26 of the United States Code provides:

> If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property

therefrom, or to conceal himself or his property therein, or to do any other act ... tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or the immediately preceding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year, or both, as the case may be, and notwithstanding any other provision of law, such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of the tax so determined ... and shall cause notice of such determination and assessment to be given the taxpayer, together with a demand for immediate payment of such tax.

If the IRS reasonably determines that taxes are threatened, a termination assessment is immediately authorized to accurately determine the amount of tax due, to demand payment of that amount, and to levy upon the taxpayer's property. 26 U.S.C. § 6851.

 There is a limited and expedited[3] judicial review[4] of this procedure un-

---

**2.** In contrast, a "jeopardy assessment" is a special assessment in cases where more routine methods of collection might be ineffective or substantially jeopardized if collection efforts are delayed for tax years that have already ended and for which the due date for filing the return has passed. 26 U.S.C. §§ 6861, 6862.

**3.** Although not raised by the parties, in this case, there is no evidence Petitioner sought to enforce his section 7429(c) right to have a determination within twenty days. This raises the issue whether this Court lacks subject matter jurisdiction to make a determination on the merits after the expiration of the twenty-day period. The case at hand is analogous to *United States v. Doyle,* 660 F.2d 277 (7th Cir.1981). In *Doyle,* the district court issued its determination after the twenty-day time limit expired. The Seventh Circuit found the district court acted within its statutory au-

thority, because the taxpayer failed to notify the district court of the twenty-day limit, and the taxpayer "show[ed] minimal concern for his section 7429 right." *Id.* at 280. The Eleventh Circuit explicitly adopted the *Doyle* decision in *Meadows v. United States,* 665 F.2d 1009, 1012 (11th Cir.1982).

In the case at hand, there is no record Petitioner informed this Court of the twenty-day limit. Petitioner filed this cause on January 24, 2002. Petitioner did not take *any* action after commencing this case until April 4, 2002 (D.E. No. 8) when he filed his motion to transfer this cause to the Honorable Wilkie D. Ferguson, Jr., which was seventy (70) days after this action was commenced (this case was subsequently transferred to the undersigned after the motion for summary judgment was fully briefed). On April 17, 2002, the parties filed a Joint Scheduling Report (D.E. No. 10), which provides additional sup-

der 26 U.S.C. § 7429. The relevant portion of 26 U.S.C. § 7429(b)(3) provides:

Within 20 days after a proceeding is commenced under paragraph (1), the court shall determine—

(A) whether or not—

(i) the making of the assessment ... is reasonable under the circumstances, and

(ii) the amount so assessed or demanded ... is appropriate under the circumstances.

The court reviews the assessment *de novo.* *See Miller v. United States,* 615 F.Supp. 781, 783 (N.D.Ohio 1985); *United States v. Doyle,* 482 F.Supp. 1227, 1229 (E.D.Wis. 1980) (comparing a section 7429 proceeding to a preliminary probable cause examination in a criminal proceeding, providing relief only where the assessment is unreasonable). In determining whether the assessment is reasonable and the amount assessed is appropriate, the Court "is to take into account not only information available to the Internal Revenue Service on the assessment date, but also any other information which bears on the issues before it." *Haskin v. United States,* 444 F.Supp. 299, 304 (C.D.Cal.1977) (citing S.Rep. No. 94–938 at 365); *see also Magluta v. United States,* 952 F.Supp. 798, 801 (S.D.Fla.1996). The Court shall address the reasonableness and the amount of the assessment in turn.

*A. Reasonableness of the Assessment*

 Although section 7429 does not set forth specific guidelines as to what constitutes "reasonable under the circumstances," courts in reviewing termination assessments have been guided by the above-quoted principles of section 6851 for making such an assessment. The general test courts have used to determine whether the making of an assessment is reasonable includes an inquiry into whether: (1) the taxpayer is or appears to be planning to quickly depart from the United States to conceal himself; (2) the taxpayer is or appears to be designing to place his property beyond the reach of the government either by removing it from the United States or by concealing it, by transferring it to other persons, or by dissipating it; or (3) the taxpayer's financial solvency appears to be imperiled. *See Cantillo v. Coleman,* 559 F.Supp. 205, 206–07 (D.N.J. 1983). The government bears the burden of proving the assessment was reasonable. 26 U.S.C. § 7429(g)(1).

Courts have found the general requirements of reasonableness for termination assessments satisfied under specific circumstances. Particularly, courts have found involvement in illegal activity to be sufficient—as it is suggestive of any one of the above-listed requirements—to satisfy the limited review under section 7429. *See Mueller v. C.I.R.,* 882 F.Supp. 1060, 1062 (S.D.Fla.1995); *Harvey v. United States,* 730 F.Supp. 1097, 1106 (S.D.Fla.1990) ("A taxpayer's involvement in illegal activity

port Petitioner did not seek to enforce his right to a determination within the twenty-day time limit. Paragraph ten states there are no unique factual or legal issues in this case. *Id.* Additionally, the Joint Scheduling Report sets forth proposed deadlines, including a trial date. *Id.* Therefore, since Petitioner did not assert his section 7429 rights for a determination within twenty days of commencing this action, this Court shall address the merits of the termination assessment.

4. As stated above, the parties were preparing for a trial. Respondent filed a Motion for Summary Judgment (D.E. No. 22), which has been fully briefed. Under section 7429, this cause is before the Court for a summary determination, therefore, the Court shall utilize the documentation provided with the Motion for Summary Judgment as the basis for its decision; however, the Court shall not rule on the motion since the entry of judgment is inappropriate. See 26 U.S.C. § 7429(b).

alone is sufficient to warrant the use of a termination or jeopardy assessment") (*citing Young v. United States*, 671 F.Supp. 1340, 1343 (S.D.Fla.1987)). Courts have also found the general criteria are satisfied by a broad range of erratic fiscal behavior, which suggests tax dollars are in jeopardy. *See Magluta*, 952 F.Supp. at 802 (listing factors the Court may consider including: involvement in illegal activity, possession of large amounts of cash, dissipation of assets, lack of assets from which tax liability may be collected; and prior tax returns reporting little or no income despite possession of large amounts of cash); *see also Young*, 671 F.Supp. at 1343–44 (S.D.Fla. 1987) (assessment reasonable where taxpayer participated in criminal activity and dealt in large amounts of undisclosed cash while reporting small amounts of income on federal tax returns).

The Court's ultimate obligation is to ensure Respondent has acted reasonably in its assessment. Therefore, "[i]n order to establish that the making of a jeopardy assessment is reasonable under the circumstances, the Service 'need only establish that the taxpayer's circumstances *appear* to be jeopardizing collection of a tax—not whether they definitely do so.'" *Miller*, 615 F.Supp. at 786 (*quoting Cantillo*, 559 F.Supp. at 207); *see also Bean*, 618 F.Supp. at 658 ("Whether Bean in fact intended to depart the country, liquidate his assets and thereby avoid payment of his taxes is irrelevant."). The question ultimately is not whether the taxing authority was correct but whether the assessment was reasonable under the circumstances.

In the case at hand, the pertinent facts are undisputed. Petitioner pled guilty to charges of trafficking in cocaine (JPTS at ¶ V(13)) after being arrested for possession of four kilograms of cocaine. *Id.* at ¶ V(2). Approximately $2.7 million in cash was seized from Petitioner's residence. *Id.* The seized funds were grossly out of proportion with the amounts reported in all his income statements, including those provided by Petitioner. *Id.* at ¶¶ V(10), V(11).

Petitioner argues his family's business in Haiti requires tremendous amounts of hard currency (*see* Petitioner's Memorandum of Law in Response to Motion for Summary Judgment [hereinafter "Response"], D.E. No. 28–1). Petitioner suggests his family's business is a plausible alternative to the IRS's suspicion the seized funds were funds being illegally concealed from the government. *Id.* The Court is not convinced Petitioner's argument renders the assessment unreasonable, when the Court considers the evidence as a whole. Petitioner plead guilty to drug trafficking, and the income reported on his prior tax returns is grossly disproportionate compared with the total value of the drugs and currency seized.

Petitioner's argument ignores his admitted illegal drug trafficking. Drug trafficking results in taxable income; however, the Court is not aware that Petitioner intended to report such proceeds as taxable income, as is required under the law. Nor is the Court aware Petitioner previously reported any illegal proceeds on prior tax returns, which would have negated Respondent's argument that Petitioner was unlikely to report his illegal income for tax year 2001. According to the tax returns submitted by Petitioner, his gross receipts for tax year 2000 only totaled $328,847 and for 2001, the total was $465,417 (JPTS at ¶ V(11)), when coupled with Petitioner's admitted illegal drug activity, his previously reported income is grossly out of proportion with the value of the cocaine and cash seized. Therefore, it is reasonable to believe Petitioner sought to conceal the profits from his admitted illegal drug trafficking from taxation. *See*

*Lopez v. I.R.S.,* 614 F.Supp. 1332, 1335 (E.D.N.Y.1985); *cf. Garzon v. U.S.,* 605 F.Supp. 738, 746 (S.D.Fla.1985) (assessment was unreasonable where taxpayer explained currency was derived from his inheritance in Columbia and there was no evidence of criminal activity).

Petitioner also seeks for this Court to determine the assessment was unreasonable based upon the alleged illegality of the search that yielded the seized cash from Petitioner's home (*see* Response at 5). Yet, Petitioner offers only the conclusory allegation the funds were seized unlawfully, which is insufficient for this Court to find the assessment was unreasonable.

This Court therefore finds the second above-cited general characteristic of a reasonable assessment, that Petitioner appeared to be designing to place his property beyond the reach of the government, has been satisfied by the undisputed facts in the record. The Respondent acted reasonably in applying its emergency powers for a termination assessment. This is sufficient to satisfy Respondent's burden.

*B. Appropriateness of the Amount*

 The final issue for consideration, having found the assessment itself reasonable, is whether the amount assessed is "appropriate under the circumstances." 26 U.S.C. § 7429(b)(3)(A)(ii). Petitioner bears the burden of demonstrating the amount of tax liability assessed is inappropriate. 26 U.S.C. § 7429(g)(2). There is a presumption the amount assessed satisfies the section 7429 standard. *Magluta,* 952 F.Supp. at 803; *Felkel v. United States,* 570 F.Supp. 833, 841 (D.S.C.1983). In determining whether the amount of the assessment was appropriate, the Court should examine only the method of computation. In this regard, the Petitioner must show the computation is manifestly incorrect. *Cantillo,* 559 F.Supp. at 207. A claim concerning merely the incorrectness

of the assessed amounts, rather than the method of computation, may be determined in a subsequent proceeding before the Tax Court or in a suit for refund before a United States District Court or a Court of Claims. *Id.*

Petitioner argues Respondent erroneously applied the second transaction rule. Petitioner has cited no legal authority requiring Respondent to utilize an alternate accounting method, whereas at least one court has found the IRS's use of the net worth expenditures method was reasonable where the assessment was made against purported drug dealers, where their records did not accurately reflect income. *See Cheek v. U.S.,* 587 F.Supp. 1012, 1015 (W.D.N.C.1984).

 In this case, the IRS based the termination assessment according to the total amount of the cocaine and cash seized, which was adjusted accordingly (JPTS at ¶ V(8)). In the forfeiture case, Petitioner stipulated he was the owner of the currency:

> Additionally, Claude Guillaume represents and states he is the sole owner of the currency seized on March 2, 2001, the amount being Two Million Six Hundred Thirteen Thousand Dollars ($2,613,201.00) U.S. currency and Nine Hundred Thirty Six Dollars ($936.00) U.S. currency, and acknowledges that this settlement agreement is contingent upon his ownership of that money.

(*See* forfeiture case, D.E. No. 8 at ¶ 2). Now in this case, Petitioner claims the money was part of his family's business in Haiti, and Petitioner seeks to have this Court determine the computation was inappropriate, because the IRS did not take into account Petitioner's alleged expenditures (*see* Response). The Court is not convinced it should accept Petitioner's version of the facts in this case when he stipulated to a different set of facts in

another case. Accordingly, Petitioner has failed to carry his burden of persuasion that the amount assessed was unreasonable under the circumstances.

### III. Conclusion

For the above-stated reasons, the Court finds the termination assessment is reasonable and the amount assessed appropriate under the circumstances. It is therefore:

**ORDERED AND ADJUDGED** that

Claude Guillaume's Petition for Determination (D.E. No. 1) is DENIED. This case is CLOSED and all pending motions are DENIED AS MOOT.